UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **FIFTH THIRD BANCORP, an Ohio Corporation, and FIFTH THIRD BANK, an Ohio Banking Corporation** | : : : | Civil Action No.  **1:14-cv-869** |
| | : | Judge **Sandra K. Beckwith** |
| | : | Magistrate Judge **Stephanie K. Bowman** |
| Plaintiffs | : | |
| | : | |
| vs. | : | |
| | : | |
| **CERTAIN UNDERWRITERS AT LLOYD'S SUBSCRIBING TO POLICY NUMBERS B0509QA048710 and B0509QA051310,** *et al.* | : : : : | |
| | : | |
| Defendants | : | |

_____

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS CERTAIN UNDERWRITERS AT LLOYD'S SUBSCRIBING TO POLICY NUMBERS B0509QA048710 AND B0509QA051310, AXIS INSURANCE COMPANY AND FEDERAL INSURANCE COMPANY'S MOTION FOR PROTECTIVE ORDER OR IN THE ALTERNATIVE TO STAY DISCOVERY AND BIFURCATE PLAINTIFFS' "BAD FAITH CLAIM" WITH DECLARATION OF MARK J. BYRNE ATTACHED AS EXHIBIT A**

_____

## I.  <u>INTRODUCTION</u>

Between February 2011 through October 2014, Fifth Third Bank ("Fifth Third"), at its expense, submitted millions of documents to Defendants Lloyd's Underwriters, AXIS Insurance Company, and Federal Insurance Company (the "Underwriters") in support of its fidelity bond claim ('bond claim').  After receipt of all of this information, the Underwriters continued to profess that they were unable to make a decision on whether Fifth Third was entitled to coverage for the bond policy it purchased in 2010.  As a result, Fifth Third filed suit in November 2014 for breach of contract and bad faith alleging that the Underwriters had failed to investigate Fifth Third's bond claim in a reasonable and appropriate time and manner.  On February 4, 2015 the

Underwriters filed an answer denying a breach of contract or that it had committed bad faith. (Doc. 27).

In February 2015 all Defendants including the Underwriters agreed that discovery should be conducted on all issues contained in Fifth Third's complaint and that none of the existing issues merited a request for bifurcation. (Doc. 29 in Case No. 1:14-cv-802). A Discovery Plan was filed with the Court and the Court thereafter issued a Calendar and Scheduling Order consistent with the representations of the parties. (Docs. 35, 37).

In March of 2015 Fifth Third served discovery on the Underwriters to obtain information and materials in the Underwriters' possession upon which they relied in refusing to pay Fifth Third's insurance claim and asking that they identify the merits of their position that they acted in good faith. The Underwriters originally took the position that they did not possess any documents responsive to Fifth Third's discovery requests other than the parties' correspondence and the millions of documents Fifth Third had provided to the Underwriters during the pre-suit period.

Fifth Third then served a notice of deposition on October 2, 2015 on the Underwriters requesting testimony from a corporate representative regarding numerous areas involving the Underwriters' investigation of Fifth Third's claim, coverage determinations, the amount of reserves, and other issues that relate to a claim of bad faith.

Through mid-December 2015, the Underwriters claimed that they did not possess any documents regarding the investigation of Fifth Third's claim for coverage. In late December 2015 the Underwriters admitted that their representations regarding the non-existence of any independent documentation of its investigation of Fifth Third's Bond Claim was inaccurate. At the end of December, the Underwriters agreed to produce the long overdue responsive

documents in their possession regarding their investigation.  Yet, the Underwriters delayed their production for another three months until March of 2016.

Now, apparently realizing they will have to produce information that is harmful to their legal position, the Underwriters have filed an untimely Motion for a Protective Order and/or to Bifurcate the discovery process in an effort to avoid producing relevant and material information regarding Fifth Third's claims that should have been produced over 10 months ago.  Fifth Third respectfully requests that the Underwriters' tardy motion should be overruled.

## II.    BACKGROUND

Fifth Third Bank alleged in its November 2014 complaint and January 2015 amended complaint that the Underwriters engaged in bad faith.  Yet the Underwriters claim that until December of 2015, over a year later they were unaware that Fifth Third was seeking discovery regarding its bad faith claim.  (Doc. 53, PAGEID #701).  Their explanation is that "no cause of action for bad faith [had] been pled".  (Doc. 53, PAGEID #704).  If that were the case, one would have expected the Underwriters' to file a motion challenging the alleged pleading deficiency in Fifth Third's amended complaint by October 31, 2015 as required by the Calendar Order. (Doc. 35, PAGEID #535).  The Underwriters' failure to file such a motion is consistent with the conclusion that the Underwriters were aware of the bad faith allegations set forth in Fifth Third's complaints and that their present motion is an attempt to delay the production of discoverable material that is harmful to their legal position.  The Court should not condone these tactics and instead it should deny the Underwriters' motion and require the Underwriters to produce the discovery to which Fifth Third is entitled.

### A.  The Underwriters' Agreed to Discovery Without Bifurcation.

3

Fifth Third's November 10, 2014 initial Complaint unequivocally asserted that the Defendant Underwriters had engaged in bad faith. (Doc. 1).  In paragraph 28, Fifth Third alleged that the Underwriters failed to investigate the [Bond] claim in a reasonable or appropriate time or manner.  (Doc. 1, PAGE ID #10).  Accordingly, Fifth Third alleged that the Defendants had acted in bad faith in breaching their contractual obligations to pay Plaintiff. (Doc. 1, PAGEID #11).

On January 14, 2015 Fifth Third Bank filed an amended complaint against the Underwriters.  (Doc. 24).  In the amended complaint Fifth Third reasserted its bad faith claim by alleging:

> "28.     Defendants have failed to investigate the claim in a reasonable and appropriate time or manner.
>                             . . .
> 36.     Defendants have acted in bad faith in breaching their contractual obligations to pay Plaintiffs under the Bonds by failing to acknowledge the overwhelming evidence of dishonest and fraudulent acts submitted by Plaintiffs in support of their claims." (Doc. 24, PAGE ID #263, #264).

The Underwriters filed their answer to Plaintiffs' First Amended Complaint on February 4, 2015. (Doc. 27).  Presumably, the Underwriters' counsel reviewed the amended complaint when they filed their answer and denied the allegations in paragraphs 28 and 36. (Doc. 27, PAGEID #456, #457).

As required under Fed. R. Civ. P. 26(f) and this Court's General Standing Orders on Civil Procedures, all parties met in February 2015 to discuss the issues that existed in the case.   At no time during the February 2015 conference did any of the six attorneys representing the Underwriters complain that their clients would be prejudiced by proceeding on Fifth Third's bad faith claim.  (Declaration of MJB at para. 1).  Nor did any of their six attorneys suggest that bifurcation of discovery relating to Fifth Third's bad faith allegations in its complaint would be necessary.

4

The parties filed their Discovery Plan with the Court on February 26, 2015.  (Doc. 29, PAGEID # 335 in Case No. 1:14-cv-802).  Because none of the 15 lawyers representing all of Defendants raised a concern about the scope of discovery, the parties affirmatively agreed in the proposed discovery plan that "[d]iscovery <u>will need</u> to be conducted on the issues of:  <u>all issues raised in the complaint, counterclaim, answers, and damages</u>."  (Emphasis added).  The parties further agreed "that discovery need not be bifurcated".  (Doc. 29, PAGEID #336 in Case No. 1:14-cv-802).  The Defendants did not seek any limitations on discovery and agreed that any motions relative to the pleadings must be filed on or before October 31, 2015.  (Doc. 29, PAGEID #338 in Case No. 1:14-cv-802).

On March 3, 2015 – over a year ago - Fifth Third served its First Set of Interrogatories and Request for Production of Documents on the Underwriters. (Doc. 53-1, PAGEID # 718 at para. 23).  Interrogatory 23 sought the following information:

> "23.   Identify the material acts undertaken by the Defendants or their agents to investigate Plaintiffs' claim for payment under the bonds. With respect to the investigation identify each individual and their last known address, email and telephone number who participated in such investigation." (Doc. 53-20, PAGEID # 822).

Fifth Third also requested that the Underwriters produce documents relevant to Fifth Third's bad faith claims:

> "19.   Produce all documents upon which the Defendants rely to deny the allegations contained in paragraph 28 [Defendants have failed to investigate the claim in a reasonable and appropriate time or manner] of Plaintiffs' First Amended Complaint.
>                              . . .
> 26.   Produce all documents upon which the Defendants rely to deny the allegations contained in paragraph 36 [Defendants have acted in bad faith in breaching their contractual obligations to pay Plaintiffs under the Bonds by failing to acknowledge the overwhelming evidence of dishonest and fraudulent acts submitted by Plaintiffs in support of their claims] of Plaintiffs' First Amended Complaint.
>                              . . .

5

28.    Produce all documents relating to the investigation of Plaintiffs'
claim for payment under the bonds."  (Doc. 53-20, PAGEID #827,
#828, #829).

On March 12, 2015 - after the discovery was served - all counsel, including the lawyers representing the Underwriters, attended the Preliminary Pretrial conference held by Magistrate Judge Bowman.  During the conference, none of the Defendants objected to the Court's adoption of the agreed Discovery Plan.  None of the Underwriters' counsel argued that they should not be required to answer Interrogatory #23 or respond to Document Requests 19, 26, and 28.  None of the Defendants complained that discovery regarding Fifth Third's bad faith claim should be stayed, conducted in phases, or bifurcated.  (Declaration of MJB at para 1).   In reliance of the parties' representations, Magistrate Judge Bowman issued the Calendar Order for the case, (Doc. 35, PAGEID #535), and Judge Beckwith issued her Scheduling Order. (Doc. 37).  Neither of these orders contained any provisions for bifurcation of discovery or a separate trial for Fifth Third's bad faith claim.

**B.  <u>The Underwriters Failed to Cooperate in Discovery</u>**.

On May 26, 2015 the Underwriters served their responses to Fifth Third's discovery requests.  In response to Interrogatory #23, each of the Underwriters indicated that they had reviewed millions of pages of material from Fifth Third, conducted an analysis of that material, but still were unable to conclude whether Fifth Third was entitled to coverage for its bond claim. (Doc. 53-24, PAGEID #956, Doc. 53-25, PAGEID #984, Doc. 53-26, PAGEID #1012).

In response to Document Request 19 in which Fifth Third sought documents regarding the Underwriters' failure to investigate the claim in a reasonable and appropriate time or manner, they responded that they relied on prior documents and correspondence with Fifth Third:

The documents relied on by Lloyd's [Axis] [Federal] include its letters of April 23, 2014 and August 6, 2014 (including all documents referenced therein), as well as other pre-suit correspondence between Plaintiffs and Defendants, including, but not limited to, John Blancett's February 27, 2011, September 29, 2011, July 17, 2012, December 21, 2012, April 1, 2014 and June 24, 2014 letters to Chuck Turnbull, Christopher Losquadro's January 14, 2013 letter Chuck Turnbull, and the privilege log attached to Chuck Turnbull's April 3, 2014 email to Christopher Losquadro. Copies of all the above-referenced documents are already in Plaintiffs' possession and control. Lloyd's [Axis] [Federal] reserves the right to rely on additional facts, documents and information that are ascertained in discovery, and the right to supplement its response. (Doc. 53-21, PAGEID #854, Doc. 53-22, PAGEID #887, Doc. 53-23, PAGEID #920).

In regard to Document Request 26, wherein Fifth Third sought documents regarding the Underwriters' bad faith, they responded that they relied upon documents submitted by Fifth Third and the prior correspondence:

"Lloyd's [Axis] [Federal] relies on the following documents which are already in Plaintiffs' possession and control: (i) Fifth Third Bancorp's Proof of Loss (and the exhibits and supplements thereto); (ii) all documents submitted by Plaintiffs to insurers in support of their claim regarding Matthew Ross under the Fifth Third Bancorp Bonds; (iii) the Fifth Third Bancorp Bonds; and (iv) its letters of April 23, 2014 and August 6, 2014, including all documents referenced therein. Lloyd's [Axis] [Federal] reserves the right to rely on additional facts, documents and information that are ascertained in discovery, and the right to supplement its response." (Doc. 53-21, PAGEID #856, Doc. 53-22, PAGEID #889, Doc. 53-23, PAGEID #922).

Finally, with respect to Document Request 28 which sought all documents regarding the Underwriters' investigation of Fifth Third's claim, they objected and again responded that Fifth Third already possessed all responsive documents:

[The Underwriters] state that the documents relating to its investigation include the following documents which are already in Plaintiffs' possession and control: (i) Fifth Third Bancorp's Proof of Loss (and the exhibits and supplements thereto); (ii) all documents submitted by Plaintiffs to insurers in support of their claim regarding Matthew Ross under the Fifth Third Bancorp Bonds; (iii) the Fifth Third Bancorp Bonds; (iv) its letters of April 23, 2014 and August 6, 2014, including all

7

documents referenced therein; (v) insurers' requests for documents and information dated February 22, 2011, September 29, 2011, July 17, 2012, December 21, 2012, and April 1, 2014.  Lloyd's [Axis] [Federal] reserves the right to rely on additional facts, documents and information that are ascertained in discovery, and the right to supplement its response. (Doc. 53-21, PAGEID #856-857, Doc. 53-22, PAGEID #889-890, Doc. 53-23, PAGEID #922-923).

The Underwriters failed to produce a single in-house document in response to Requests 19, 26, and 28. [1]

On June 5, 2015 counsel for Fifth Third spoke to counsel for the Defendants and asked whether the Underwriters intended to produce any documents in response to Fifth Third's document requests independent of the millions of documents the Underwriters had received from Fifth Third over the previous five years and the parties' correspondence.  Counsel for the Underwriters responded that they had no additional documents that were responsive to Fifth Third's requests.  (Declaration of MJB at para. 2).

Fifth Third issued to each of the Underwriter Defendants a Notice to Take Deposition pursuant to Fed. R. Civ. P. 30(b)(6) on October 2, 2015.  In that notice, Fifth Third requested that the Underwriters select a person on their behalf to testify as to various topics which can be summarized as follows:

> 1.   Their efforts to locate responsive documents.
>
> 10, 16.  The material facts upon which the Underwriters relied to deny Fifth Third's allegations that they failed to investigate its bond claim in a reasonable and appropriate time and manner and/or acted in bad faith.
>
> 41.  The identification of outside counsel who advised the Underwriters on coverage and when and to whom that advice was provided.
>
> 42.  The date the Underwriters anticipated litigation against Fifth Third.

---

[1] It is important to note that all of the coverage letters referenced in the discovery responses were authored by the attorneys at Sedgwick LLP who are also acting in the dual role of defense counsel in the present lawsuit.  Future discovery will uncover whether these attorneys were part of the coverage decision for the Underwriters and whether they have relevant and discoverable information regarding Fifth Third's claims.

43.  The identification of each of the Underwriters' employees involved in the investigation of Fifth Third's claims of coverage including the activities they undertook relating to their investigation.

44.  The reserves set aside for Fifth Third's claim of coverage and the material facts upon which the Underwriters relied in establishing the reserves.

46, 47, 48.  The identification, location and custodian of any documents, correspondence or written analysis related to Underwriters' review, of millions of pages of documents produced by Fifth Third as they claim to have done in response to interrogatory no. 23.

49.  The identification of any other claim made by an insured against the Underwriters for payment under a fidelity bond similar to the language to the one at issue in the present case between 2008 and 2011.  (Doc. 53-27, PAGEID #1025-1032; Doc. 53-28, PAGEID #1036-1043; Doc. 53-29, PAGEID #1059-1066).

These requests were consistent with Fifth Third's prior discovery requests which sought information about the Underwriters' investigation and the bad faith claim.  After receipt of these deposition notices on October 2, 2015, the Underwriters took absolutely no action prior to October 31, 2015 that would have been consistent with their present representation to the Court that either Fifth Third had failed to properly plead its bad faith claim, or that it was unaware that Fifth Third sought discovery regarding a bad faith claim.  Nor have they produced a corporate representative to testify as to the foregoing topics.

Throughout November and December 2015, Fifth Third continued to seek documents responsive to its discovery requests.  The Underwriters persisted in their representation that the universe of responsive documents was "those that had been provided by FTB [to the Underwriters] or that are already in their [Fifth Third Bank's] possession".  (Declaration of MJB, Exh. 1).  Thus, according to the Underwriters, no additional responsive documents existed and therefore a privilege log was unnecessary.

In a final attempt to avoid court intervention, Fifth Third sent an email on December 22, 2015 emphasizing the continued deficiencies in the Underwriters' discovery responses. Fifth Third stated that Request 28 previously served on the Underwriters included:

> "all documents relating to the investigation of Plaintiffs' claim for payment under the bonds. That request includes all documents generated between February 11, 2011 and the date Fifth Third filed its lawsuit against the [Underwriters]. Due to the fact that we have a breach of contract and a bad faith claim, those responsive documents would include, but are not limited to, the claims file, written communications within . . . [the Underwriters'] lawyers, re-insurers, and co-insurers in this case. It also includes the fee bills between the Lloyd's entities and its attorneys from February 12, 2011 until the date Fifth Third filed suit. See *Decker v. Chubb National Insurance Co.*, 2015 U.S. Dist. LEXIS 139824 at paras 9-10 (S.D. Oh Oct. 14, 2015)." [2]

(Declaration of MJB, Exh. 2).

At the end of December, the Underwriters reluctantly agreed to produce certain withheld documents. Even then, however, the initial set of documents were not received from the Underwriters' until the first week of March, 2016. (Declaration of MJB, para. 6). The most recent production occurred in mid March 2016. (Declaration of MJB, para. 7). The Underwriters continue to withhold documents and have not produced the answers to Interrogatory #23 which seeks the identification and production of a written analysis it allegedly undertook for Fifth Third's Bond Claim.

## III.    ARGUMENT

### A.    The Underwriters Are Not Entitled to a Protective Order for Discovery Requests That Have Been Outstanding For Over a Year.

Underwriters request this Court to issue a protective order for the production of discovery materials that have remained outstanding for over a year. The Underwriters assert that the

---

[2] Similarly, Fifth Third Bank sent an email to RLI's counsel on December 4, 2015 identifying why the information it requested in its prior interrogatories and document requests to RLI were discoverable in part because of the existence of a bad faith claim. (Declaration of MJB, Exh. 3).

production of the materials Fifth Third seeks would require them to (i) disclose privileged information, including their defense strategy on the breach of contract claim; (ii) review and produce claims by other insureds; and (iii) produce reserve information that is not relevant to Fifth Third's breach of contract claim. (Doc. 53, PAGEID #702). Underwriters' argument is without merit.

### 1. Fifth Third Seeks Discoverable Information Relating to the Underwriters' Bad Faith in Failing to Investigate Fifth Third's Claim in a Reasonable and Appropriate Time or Manner.

After engaging in the discovery process for over a year, the Underwriters now seek a protective order, or in the alternative, an order staying their overdue obligation to respond to Fifth Third Bank's ("Fifth Third") outstanding discovery requests. The Underwriters erroneously claim that they are entitled to an order relieving them from producing relevant and discoverable materials because Fifth Third has failed to assert a claim of bad faith against the Underwriters. In the case of *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 442 (6th Cir. 2009) the Sixth Circuit affirmed the trial court decision finding that, under Ohio law, in an action alleging bad faith denial of insurance coverage, the insured is entitled to obtain discovery of claims file documents containing attorney client communications and work product which "may cast light" on the issue of bad faith. The application of the *Boone* holding has the effect of only requiring an insured to "allege the insurer's bad faith" in the complaint in order to discover communications between the insured and insurer's attorney. *Id*. citing to *Boone v. Vanliner*, 91 Ohio St.3d 209, 217 2001 Ohio 51, 744 N.E.2d 154, 160 (Cook J. dissenting). In our case, the allegation of bad faith against the Underwriters is set forth in paragraphs 28 and 36 of Fifth Third's amended complaint.

Ohio provides for three avenues in which a recovery may be obtained for bad faith conduct relating to the breach of a contractual obligation. The first is described in the case of

*SST Bearing Corporation v. Twin City Fan Companies, LTD*, 1st Dist. No. C-110611, 2012 Ohio App. LEXIS 2248 (June 8, 2012) at para. 17. In *SST Bearing*, the Court held that an injured party is entitled to recover its attorney's fees upon a finding that the conduct of a party in failing to fulfill its contractual obligations was done in bad faith. *Id.* The concept recognizing an award of attorney's fees for a bad faith breach of contract was recently reviewed by this Court in the case of *Avis Rent A Car Systems, LLC v. City of Dayton, Ohio*, S.D. Ohio No. 3:12-cv-399, 2015 U.S. Dist. LEXIS 129516 (Sept. 25, 2015). Consistent with the ruling set forth in *SST Bearing Corp.*, this Court found that Ohio recognizes the recovery of attorney fees for a successful litigant based on bad faith conduct giving rise to a breach of contract claim. *Id.* at para. 25, 38. This is the first basis of recovery for bad faith that Fifth Third seeks in its complaint against the Underwriters.

The second and third types of bad faith can be established independent of the breach of contract claim. In *Constantinos Poneris v. Pennsylvania Life Insurance Company*, S.D. Ohio No. 1:06-cv-254, 2007 U.S. Dist. LEXIS 80685 (Oct. 18, 2007) the plaintiff alleged that the defendant had acted in bad faith by failing to investigate the claim, failing to properly apply provisions of an insurance policy, and failing to interpret the policy in his favor. *Id.* at para 7. In finding that these allegations stated a cause of action for bad faith under Ohio law, this Court reasoned that a plaintiff, in theory, can establish a bad faith claim even if there is no underlying coverage. *Poneris explains* that a bad faith tort claim can be established in two ways:

> . . . a cause of action arises for the tort of bad faith when an insurer breaches its duty of good faith by intentionally refusing to satisfy an insured's claim where there is either (1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) an intentional failure to determine whether there was any lawful basis for such refusal. Intent that caused the failure may be inferred and imputed to the insurer when there is a reckless indifference to facts or proof reasonably available to it in considering the claim.

*Id.* at para. 5 citing to *Motorists Mut. Ins. Co. v. Said*, 63 Ohio St.3d 690, 699-700, 1992-Ohio-94, 590 N.E.2d 1228 (1992). While Fifth Third fully expects to prove its breach of contract claim, under *Poneris*, a bad faith tort claim, independent of a contract of insurance, is not foreclosed even though the underlying breach of contract claim may have failed. *Id.* at para 7.[3] Fifth Third also seeks recovery against the Underwriters for the tort of bad faith.

> **2. Fifth Third Is Entitled it to Discovery of Attorney-Client and Work Product Materials that May "Cast Light" on Whether the Underwriters Acted in Bad Faith.**

Documents between counsel and an insurance company created prior to the denial of coverage are not protected from discovery when a claim for bad faith exists. In *Jeffrey Decker v. Chubb National Insurance* Company, S.D. Ohio No. 1:15-cv-88, 2015 U.S. Dist. LEXIS 139824 (Oct. 14, 2015), citing *Boone v. Vanliner Ins. Co.,* 91 Ohio St.3d 209 (2001), this Court recently echoed the Ohio exception permitting discovery of documents maintained by an insurance company that may otherwise be protected by the attorney-client or work product privileges where the insured alleges a claim of bad faith.

> [W]e hold that in an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage. At that stage of the claims handing, the claims file materials will not contain work product, i.e. things prepared in anticipation of litigation, because at that point, it has not yet been determined whether coverage exists.

---

[3] Throughout its memorandum, the Underwriters assert various conclusions of law without a citation to any authority supporting its representation. For example, the Underwriters state "[O]hio law is clear that where an insurance policy does not cover a claim, it is not bad faith to refuse to cover the claim. Accordingly, any purported bad faith claim would fail if Fifth Third does not establish that coverage is implicated under the Bonds for the Fifth Third Claim". (Doc. 53 PAGEID #697). Given *Poneris*, this is clearly an inaccurate statement of law. *See also Yates v. Allstate Ins. Co.,* S.D. Ohio No. 3:10-cv-438, 2012 U.S. District LEXIS 73234 at para. 6 (May 25, 2012) (it is the insurers breach of the duty [of good faith that] gives rise to a cause of action of tort irrespective of any liability that may arise from a breach of the underlying insurance contract).

*Id.* at para. 4-5 citing to *Boone v. Vanliner Ins. Co.*, 91 Ohio St.3d 209 (2001).  Thus, claims file materials showing an insured's lack of good faith in processing, evaluating, or refusing to pay a claim are unworthy of protection afforded by the attorney-client or work product privilege.  *Id*. at para 5 citing to *Unklesbay v. Fenwick*, 167 Ohio App.3d 408, 2006-Ohio-2630, 855 N.E.2d 516, 521 (2nd Dist.).

In determining the scope of bad faith discovery, the Court referred the parties to the case of *In re Prof'ls Direct Ins. Co.*, *supra*:

> Ohio courts have read *Boone* more broadly than *Professionals Direct* claims.  The leading Ohio Court of Appeals case *Garg v. State Auto. Mut. Ins. Co.*, 155 Ohio App.3d 258, 2003 Ohio 5960, 800 N.E.2d 757 (2003), read *Boone* to require the disclosure of all documents that "may cast light" on whether the insurer acted in bad faith. *Id*. at 763 . . .; *see also Boone*, 744 N.E.2d at 156 ("The issue before us is whether, in an action alleging bad faith denial of insurance coverage, the insured is entitled to obtain, through discovery, claims file documents containing attorney-client communications and work product that *may cast light* on whether the denial was made in bad faith") (emphasis added).  This, we believe, is a reasonable application of *Boone.*

*Id.* at para. 6 citing to *In re Prof'ls Direct Ins. Co.,* 578 F.3d at 442.  Accordingly, an insured is entitled to any document in the possession of the underwriters that "may cast light" on whether they acted in bad faith including but not limited to those documents relevant to the issue of coverage, claims processing, the steps taken to investigate a coverage claim, and billing invoices from counsel. *Id* at para. 10-11.

Thus, Fifth Third is entitled to all documents that "may cast light" on the Underwriters' actions in this case which includes all communications with Sedgwick LLP regarding the issue of coverage, the Underwriters' processing of Fifth Third's claim, the steps to investigate the claim, the basis for failing to come to a coverage decision, and the billing invoices from Sedgwick LLP.   The Underwriters are therefore not entitled to a protective order relieving them

from the obligation to produce relevant and discovery materials in the face of Fifth Third's bad faith claim.

### 3.   The Underwriters Cannot Avoid a Bad Faith Claim by Never Acting on Fifth Third's Coverage Claim.

The Underwriters continue to assert that even after the receipt of millions of documents, they still cannot make a coverage decision, and that, as a result, a bad faith claim as a matter of law cannot exist.  (Doc. 53, PAGEID #695).  This position is incorrect.

The Sixth Circuit has held that an outright denial of a claim is not required in order to obtain discovery under *Boone*.  *In re Prof'ls Direct Ins. Co.,* 578, F.2d at 442, at fn8.  Hence, in cases of bad faith where no formal denial of coverage has been asserted by the insurance company, the Court must come to a conclusion as to the date that a constructive denial of coverage occurred.  *C.B. Fleet Company, Inc. v. Colony Specialty Insurance Co.*, N.D. Ohio No. 1:11-cv-0375, 2013 U.S. Dist. LEXIS 6504 at para. 3 (Jan. 15, 2013).  In most cases that transformation occurs upon the filing of an actual pleading by the insurance company.  *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, S.D. Ohio No. 2:07-cv-1285, 2012 U.S. Dist. LEXIS 54305 (Apr. 17, 2012) at para 14.

Based upon the foregoing line of authority, the Underwriters must produce all documents relating to all communications and work product the Underwriters had with in-house counsel and Sedgwick LLP from the date Fifth Third initiated the claim in February 2011 until the date the Underwriters filed their answer in this case on February 4, 2015.[4]  These materials are not entitled to protection under Fed. R. Civ. P. 26.

---

[4] The Underwriters maintain that until the lawsuit was filed its efforts were investigative in nature.  It seeks protection only for those documents which include information regarding Underwriters strategy in defense of Fifth Third's claim.  As a matter of course, those documents would not have been authored until the Underwriters investigative efforts had ceased, which according to the Underwriters, was upon receipt of Fifth Third's lawsuit.

**4.** **Documents Showing the Underwriters' Treatment of Uninsured's Claims are Discoverable.**

This Court has concluded that other claims information is relevant in bad faith litigation to determine whether an insurance company engaged in a pattern or practice of denying claims, or in this case, simply never reaching a conclusion as to whether coverage exists. *Constantinos Poneris v. Pennsylvania Life Ins. Co.*, 2007 U.S. Dist. LEXIS 80685 at paras. 2-3.

The Underwriters make the unsubstantiated assertion that Fifth Third's request to identify other claims made by insureds for payment under a fidelity bond similar in language to the one at issue in the present case between 2008 and 2011 is burdensome. (Doc. 53, PAGEID # 709).  The Underwriters do not indicate how many bond claims were made, the number of reviews that must be undertaken, the time required to undertake the review, or any information about the alleged burden on its Rule 30(b)(6) witness to review these claims and provide knowledgeable testimony about them.   As this Court has previously recognized with respect to RLI's recent Rule 30(b)(6) request, the stakes in the case are significantly high in considering the proportionality of a discovery request.  Without any evidence to support the alleged burdensome nature of Fifth Third's request, the Underwriters' argument should be denied.

**5.** **The Underwriters Reserve Information is Discoverable**.

Information regarding the amount of reserves is clearly discoverable when bad faith is alleged. *Park-Ohio Holdings Corp v. Liberty Mutual Fire Ins.*, N.D. Ohio No. 1:15-cv-943, 2015 U.S. Dist. LEXIS 112448 (Aug. 25, 2015) at para. 9 (amount of reserves is discoverable). *Retail Ventures Inc. v. National Union Fire Ins. Company of Pittsburgh*, S.D. Ohio No. 2:06-cv-443, 2007 U.S. Dist. LEXIS 83425 (Nov. 8, 2007), at para. 13 (information regarding reserves, even if not determinative of every issue, is nevertheless information calculated to lead to the discovery of admissible evidence). *VRBCAM/WSUI, LLC v. Lexington Insurance Co*., E.D.

16

Mich. No. 12-cv-15686, 2013 U.S. Dist. LEXIS 149351 (Oct. 17, 2013) at para. 6-8 (reserves are

discoverable; *Consugar v. Nationwide Insurance Co. of America*, M.D. Pa No. 3:10-cv-2084,

2011 U.S. Dist. LEXIS 61756 (June 9, 2011) at para. 15 (the amount of reserves, if any, assigned

to [claimant] claims should be produced; *Pepperwood of Naples Condominium Assoc., Inc. v.

Nationwide Mutual Fire Ins. Co.*, M.D. Fla. No. 2:10-cv-753, FEM-36SPC, 2011 U.S. Dist.

LEXIS 114073 at para. 37 (Oct. 1, 2011) ) (same); *Isilon Systems, Inc. v. Twin City Fire

Insurance Co.*, W.D. Wash. No. C10-1392 MJP, 2012 U.S. Dist. LEXIS 18626 (Feb. 15, 2012)

(amount of reserves is discoverable).  The Underwriters' reserve information should be produced

in this case as well.

### B.  The Court Should Deny the Underwriters' Request for a Stay of Discovery and Bifurcation of Fifth Third's Bad Faith Claim.

The Underwriters request for bifurcation of Fifth Third's bad faith claim should be

denied.  Federal law governs bifurcation in diversity cases.  *Wolkosky, et al. v. 21st Century

Centennial Ins. Co.*, S.D. Ohio No. 2:10-cv-439, 2010 U.S. Dist. LEXIS 79643 at para. 6 (July

14, 2010).  Federal Rule Civ. P. 42(b) permits a court to order a separate trial for one or more

claims for convenience, to avoid prejudice, or to expedite and economize.  *Wolkosky*, 2010 U.S.

Dist. LEXIS 79643 at para. 7.  The decision to bifurcate lies within the sound discretion of the

district court.  *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996) (citing *Davis v.

Freels*, 583 F.2d 337, 343 (7th Cir. 1978)).  However, bifurcation is "the exception to the general

rule" that favors resolving disputes in a single proceeding.  *Chubb Custom Ins. Co. v. Grange

Mut. Cas. Co.*, S.D. Ohio No. 2:07-cv-1285, 2008 U.S. Dist. LEXIS 91496 at para. 2 (Nov. 3,

2008) (citing *Lis v. Robert Packer Hosp.,* 579 F.2d 819, 824 (3d Cir. 1978)).  Therefore, a

bifurcation decision should be grounded on the facts and circumstances of the individual case.

*Saxion*, 86 F.3d at 556.  The party moving for bifurcation bears the burden of demonstrating that

concerns of judicial economy and prejudice weigh in favor of granting the motion. *General Electric Credit Union v. National Fire Insurance of Hartford*, S.D. Ohio No. 1:09-cv-143, 2009 U.S. Dist. LEXIS 96085 (Sept. 30, 2009) at para. 6. In this case, the Underwriters have not met that burden.

      **1.**   **The Underwriters Will Not Be Prejudiced by the Denial of Their Motion to Bifurcate.**

The Underwriters' contention that their defense of the breach of contract claim will be prejudiced is unpersuasive. This Court routinely denies insurance companies motions to bifurcate breach of contract claims from bad faith claims. *See Penn-Starr Insurance Co. v. Barr Bros. Plastering Co.*, S.D. Ohio No. 2:10-cv-00587, 2011 U.S. Dist. LEXIS 39885 (Mar. 27, 2011) at para. 7 (insurer's argument that resolution of the coverage dispute would preclude an insured's bad faith claim is insufficient to justify bifurcation). *Woods v. State Farm Fire & Casualty Company,* S.D. Ohio No. 2:09-cv-482, 2010 U.S. Dist. LEXIS 35230 (Mar. 16, 2010) (denying the motion to bifurcate based upon the failure of the insurance company to demonstrate it will suffer prejudice in the event the coverage and bad faith claims are tried together). *General Electric Credit Union v. National Fire Insurance of Hartford*, 2009 U.S. Dist. LEXIS 96085 at para. 7 (same). *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, 2008 U.S. Dist. LEXIS 91496, at para. 8 (denying motion to bifurcate where plaintiff failed to demonstrate that it would be unfairly prejudiced by producing documents and proceeding with all claims at once, including bad faith). *Bondex Int'l, Inc. v. Hartford Accident & Indemn. Co.*, N.D. Ohio No. 1:03-cv-1322, 2004 U.S. Dist. LEXIS 28795 (Feb. 19, 2004) at para. 12 (a defendant cannot rely upon mere assertions that permitting discovery on the bad faith claim will prejudice its ability to defend the underlying coverage claim; a specific showing is required). The Underwriters mere assertion of

prejudice without any proof does not entitle them to a stay of Fifth Third's discovery requests and to bifurcation at trial.

The Underwriters argue, alternatively, that under Ohio substantive law, a trial court's denial of a request to bifurcate the bad faith claim and stay discovery is grossly prejudicial to the insurer. (Doc. 53, PAGEID # 707-708).  This Court, however, has already rejected that argument.

> "A federal court exercising diversity subject matter jurisdiction over state law claims, as the Court is in this case, must apply state substantive law to those claims. 28 U.S.D. §1562; *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427, n. 7, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938), overruling *Swift v. Tyson*, 41 U.S. 1, 10 L. Ed. 865 (1841) (Story, J., holding that "the laws of the several states" in the Judiciary Act of 1789 means only the statutory law of the States).  But the issue of bifurcation is procedural, not substantive.  In *Wolkosky, supra*, Judge Frost expressly determined that a bifurcation issue of the sort presented here is governed by Fed. R. Civ. P. 42 because he concluded that Rule is within the scope of the Rules Enabling Act, applying the analysis required by *Hanna v. Plumer*, 380 U.S. 460, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965), and *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S. Ct. 1978, 64 L. Ed. 2d 659 (1978).  Thus while the Court will apply Ohio substantive law in deciding this case, it applies federal procedural law in deciding the bifurcation issue."

*Steinberger v. State Farm Automobile Insurance, et al.*, S.D. Ohio No. 3:10-cv-015, 2010 U.S. Dist. LEXIS 100552 at para. 9-10 (Sept. 9, 2010).  See also *Stafford v. Jewelers Mut. Ins. Co.*, S.D. Ohio No. 3:12-cv-050, 2012 U.S. Dist. LEXIS 87327 at paras. 2-3 (June 25, 2012) (the issue of bifurcation for an insured's bad faith claim from the breach of contract claim is procedural and governed by Federal law).

## 2.  The Review of Privileged Materials by the Court is Not Burdensome.

The Underwriters argue that the Court will need to undertake an in-camera review of the attorney client communications and therefore all bad faith discovery should be stayed. (Doc. 53,

PAGEID # 711).  Within the last month the Underwriters have produced their privilege logs.

The AXIS privilege log contains 220 entries, the ACE privilege log contains 248 entries, and the

Fidelity log contains 882 entries.  (Declaration of MJB at para 8).  The parties have yet to

determine which of these entries "may cast light" on the Underwriters' bad faith, so the number

of communications may be fewer.  And it may be that if the Court denies the Underwriters'

motion, they will recognize that some or all communications should be produced without

insisting first on review by the Court.  Fifth Third appreciates the time that the Court has

devoted, and will continue to devote, to this matter, but respectfully suggest that the possibility

of some in-camera review does not warrant bifurcation of Fifth Third's bad faith claim

### 3.  The Underwriters Have Failed to Demonstrate a High Potential for Jury Confusion.

This lawsuit is about whether the Underwriters breached their contract and committed

bad faith by failing to reasonably investigate and pay Fifth Third for the losses it sustained as a

result of its employee's dishonesty.   The parties continue to engage in discovery, and there is no

basis to conclude at this time that the only way to avoid jury confusion is to bifurcate the bad

faith claim under each of the case numbers thus requiring four jury trials in this case.  Presently,

no credible evidence exists that a jury will be confused.  *The Procter & Gamble Company v.*

*CAO Group Ins.*, S.D. Ohio No. 1:13-cv-337, 2013 U.S. Dist. LEXIS 163831 at para. 9 (Nov. 8,

2013).  *See Also Pandora Distribution LLC v. Ottawa OH LLC*, N.D. Ohio No. 3:12-cv-02858,

2015 U.S. Dist. LEXIS 26496 at para. 4 (Mar. 4, 2015) (motion to bifurcate denied because no

evidence exists that the insurer will be prejudiced by a single trial).

## IV.  SUMMARY

For all of the foregoing reasons Fifth Third respectfully requests the Underwriters'

motion should be denied.

RESPECTFULLY SUBMITTED,

/S/ Mark J. Byrne
**MARK J. BYRNE (0029243)**
**KENNETH F. SEIBEL (0025168)**
JACOBS, KLEINMAN, SEIBEL & MCNALLY
*Trial Counsel for Plaintiffs*
Cincinnati Club Building
30 Garfield Place, Suite 905
Cincinnati, OH 45202
Phone: (513) 381-6600
Fax: (513) 381-4150
Email: mbyrne@jksmlaw.com
        kseibel@jksmlaw.com


/S/ Charles E. Turnbull
**CHARLES E. TURNBULL** (Pro Hac Vice)
**LAWRENCE M. SCOTT** (Pro Hac Vice)
**MARC D. KASZUBSKI** (Pro Hac Vice)
O'REILLY RANCILIO P.C.
*Co-Counsel for Plaintiffs*
12900 Hall Road, Suite 350
Sterling Heights, MI 48313
Phone: (586) 726-1000
Fax: (586) 726-1560
Email: cturnbull@orlaw.com
        lscott@orlaw.com
        mkaszubski@orlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 11, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

*Attorneys for Defendant Certain Underwriters at Lloyd's Subscribing
to Policy Numbers B0509QA048710 and B0509QA051310,
Axis Insurance Company and Federal Insurance Company:*

> David P. Kamp, Esquire
> Brian D. Goldwasser, Esquire
> Jean Geoppinger McCoy, Esquire
> White, Getgey & Meyer Co. LPA
> Fourth and Vine Tower
> One West Fourth Street, Suite 1700
> Cincinnati, OH 45202
> Email: dkamp@wgmlpa.com
> bgoldwasser@wgmlpa.com
> jmccoy@wgmlpa.com

> John W. Blancett, Esquire
> Christopher J. Losquadro, Esquire
> Christopher C. Novak, Esquire
> Sedgwick LLP
> Brookfield Place
> 225 Liberty Street, 28th Floor
> New York, NY 10281-1008
> Email: John.blancett@sedgwicklaw.com
> Christopher.Losquadro@sedgwicklaw.com
> Christopher.Novak@sedgwicklaw.com

*Attorneys for Defendant Continental Insurance Company,
Fidelity and Deposit Insurance Company, St. Paul Mercury:
Insurance Company:*

> Luke J. Busam, Esquire
> Frost Brown Todd LLC
> 3300 Great American Tower
> 301 E. Fourth Street
> Cincinnati, OH 45202
> Email: lbusam@fbtlaw.com

Julia Blackwell Gelinas, Esquire
Bryan S. Strawbridge, Esquire
Frost Brown Todd, LLC
201 N. Illinois Street, Suite 1900
P.O. Box 44961
Indianapolis, IN  46244-0961
Email:  jgelinas@fbtlaw.com
       bstrawbridge@fbtlaw.com

/S/  Mark J. Byrne

**MARK J. BYRNE (0029243)**
*Trial Counsel for Defendant Fifth Third Bancorp*
*and Plaintiffs Fifth Third Bancorp and Fifth*
*Third Bank*