# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

|  |  |
|---|---|
| **FIFTH THIRD BANCORP, an Ohio Corporation, and FIFTH THIRD BANK, an Ohio Banking Corporation** | : Civil Action No. **1:14cv869** |
|  | : |
|  | : Judge **Sandra K. Beckwith** |
| Plaintiffs | : Magistrate Judge **Stephanie K. Bowman** |
|  | : |
| vs. | : |
|  | : |
| **CERTAIN UNDERWRITERS AT LLOYD'S SUBSCRIBING TO POLICY NUMBERS B0509QA048710 and B0509QA051310, *et al.*** | : |
|  | : |
|  | : |
| Defendants | : |
|  | : |

## DECLARATION OF MARK J. BYRNE

Comes now, Mark J. Byrne, pursuant to 28 U.S.C. §1746 and provides the following Declaration:

1.  On March 12, 2015 I attended a Preliminary Pretrial Conference held by Magistrate Judge Stephanie Bowman in the above captioned matter.  During the conference, issues regarding the Scheduling Order were discussed.  None of the Defendants' counsel objected to the Court's adoption of the agreed upon Discovery Plan which did not limit discovery or request that the case be bifurcated.  Furthermore, during the conference, none of the counsel representing the Underwriters argued that they should not be required to answer Interrogatory #23 or respond to Document Requests 19, 26, or 28.  Finally, none of the Defendants' counsel complained that discovery regarding Fifth Third's existing bad faith claim should be stayed, conducted in phases, or bifurcated.

2.  On June 5, 2015 I spoke to counsel for the Underwriters and asked whether the



EXHIBIT

A

Underwriters intended to produce any documents responsive to Fifth Third's prior document requests independent of the millions of documents the Underwriters had received from Fifth Third over the previous five years. Counsel for the Underwriters indicated his client had no additional documents responsive to Fifth Third's document requests.

3. Attached hereto as Exhibit 1 is a true and accurate copy of an email from Counsel for the Underwriters dated December 18, 2015.

4. Attached hereto as Exhibit 2 is a true and accurate copy of an email I sent to Counsel for the Underwriters dated December 22, 2015.

5. Attached hereto as Exhibit 3 is a true and accurate copy of an email I sent to Counsel for RLI on December 4, 2015.

6. At the end of December 2015, the Underwriters agreed to produce additional documents responsive to Fifth Third's discovery requests. A portion of those additional documents were not received until the first week of March 2016.

7. The Underwriters have continued to produce documents throughout the month of March 2016.

8. Within the last month the Underwriters have produced privilege logs for AXIS, ACE, and Fidelity which identify documents the Underwriters claim are privileged in this case. The AXIS log contains 220 entries, the ACE log contains 248 entries and the Fidelity log contains 882 entries. Further discovery will determine which of these entries "may cast light" on the Underwriters' bad faith.

Executed on this 11th day of April 2016.

_____

MARK J. BYRNE

2

**Mark Byrne**

| | |
|---|---|
| **From:** | Brian Goldwasser <bgoldwasser@wgmlpa.com> |
| **Sent:** | Friday, December 18, 2015 5:42 PM |
| **To:** | Mark Byrne |
| **Cc:** | Christopher.Losquadro@sedgwicklaw.com; Novak, Christopher (Christopher.Novak@sedgwicklaw.com); David Kamp; Charles Turnbull (cturnbull@orlaw.com); Ken Seibel; Scott Schmookler (sschmookler@gordonrees.com); Regina Ripley (rripley@gordonrees.com); Ji Suh (jsuh@gordonrees.com); 'jgelinas@fbtlaw.com' (jgelinas@fbtlaw.com) |
| **Subject:** | Response to 12/18/2015 letter |

Mark,

Thanks for your letter from today.  We are in the process of digesting your comments and will be responding to them in due course.  In the meantime, though, you made a reference at the bottom of page 10 that our clients have not produced documents or a privilege log associated with FTB's request for production.  As we have discussed, and was again brought up by Chris Losquadro during our December 3rd call, we believe that our clients have fully responded to FTB's document demands.  No where in the document requests did FTB seek our clients' claims files nor any communication that our clients (or their counsel) had with counsel for other insurers.  The only documents, therefore, are those that have been provided by FTB or that are already in its possession.  We would be more than happy to copy them and send you back a duplicate of what you already have but I thought we had agreed that it was unnecessary to re-produce or distribute that which everyone already had in their possession.

As to the fact that other insurers have provided you with non-privileged documents from their claim's files and privilege logs, it is our recollection that Julia confirmed on our call that FTB never demanded claims files and that her clients only produced claim files after you specifically requested them.  FTB has not made this request to our clients.  If you make that request in writing, as Chris indicated on the December 3rd call, our clients will respond in due course.

We understand from your letter that you will be addressing this further in a separate letter that will be forwarded shortly.  To the extent that this issue requires further explanation by us then we will be happy to respond.

Brian

Brian D. Goldwasser
White, Getgey & Meyer Co. LPA
One West Fourth Street, Suite 1700
Cincinnati, OH 45202
Office: 513.241.3685
Cell: 513.260.1023
bgoldwasser@wgmlpa.com

This is a privileged and confidential communication.  If you are not the intended recipient, you must:  (1) notify the sender of the error; (2) destroy this communication entirely, including deletion of all associated attachment files from all individual and network storage devices; and (3) refrain from copying or disseminating this communication by any means.

1



EXHIBIT

1

## Mark Byrne

| | |
|---|---|
| **From:** | Mark Byrne |
| **Sent:** | Tuesday, December 22, 2015 2:40 PM |
| **To:** | Brian Goldwasser |
| **Cc:** | David Kamp; christopher.losquadro@sedgwicklaw.com; cturnbull@orlaw.com; Ken Seibel |
| **Subject:** | Lloyds entities discovery responses and Rule 30(b)(6) topics |

Brian,

As a follow up to our conversation yesterday, Fifth Third Bank has serious concerns about Lloyds, Axis, and Federal's (the "Lloyds entities) interrogatory and document responses. In Document Request No. 28, we asked for all documents relating to the investigation of Plaintiffs' claim for payment under the bonds. That request includes all documents generated between February 11, 2011 and the date Fifth Third filed its lawsuit against the Lloyds entities. Due to the fact that we have a breach of contract and a bad faith claim, those responsive documents would include, but are not limited to, the claims file, written communications within the Lloyds' entities relating to the Fifth Third's claim and written communications with third parties including, but not limited to, its lawyers, re-insurers, and co-insurers in this case. It also includes the fee bills between the Lloyds entities and its attorneys from February 11, 2011 until the date Fifth Third filed suit. See *Decker v. Chubb National Insurance Co.*, 2015 U.S. Dist. LEXIS 139824 at paras 9-10 (S.D. Oh Oct. 14, 2015). Document Request 58 seeks all documents relating to the underwriting negotiation and issuance of the Fifth Third bonds in this litigation. Your client refused to produce any documents. These documents are relevant and should be produced. Finally, Interrogatory No. 23 asks the Lloyds entities to identify he material facts undertaken by the defendants or their agents to investigate Plaintiff's claim for payment under the bonds. It also seeks the identity of each individual who participated in the investigation. Your clients responded that the investigation included:

- The review and <u>analysis</u> of Fifth Third Bancorp's Proof of Loss;

- The review and <u>analysis</u> of millions of pages of documents produced by Plaintiffs in support of claim under Fifth Third Bancorp's bonds;

- The review and <u>analysis</u> of pleadings, motions, decisions, and orders, appeals, and other litigation materials from the following lawsuits: *Fifth Third Bank v. Concord Capital Management, LLC, et al.*, Case NO. 2010 L 006868, Circuit Court of Cook County Department, Law Division, Illinois; (b) *Nina Investments, LLC v. Fifth Third Bank, et al.*, Case No. 2012 L 007547, Circuit Court of Cook County Department, Law Division, Illinois; (c) *Concord Capital Management, LLC v. Fifth Third Bank, et al*, Index No. 650478/2010, Supreme Court of the State of New York, County of New York; and (d) *Fifth Third Bank v. Legacy Life, LLC*, Case No. 3:12-cv-00543, U.S. District Court, Middle District of Tennessee.

The interrogatory answer does not identify the manner of the analysis undertaken or the conclusion of said analysis. Nor has the Lloyds entities produced documents relating to that analysis. Your client indicates that counsel for Federal, Michael Mallett and Eric Schall of Chubb & Son participated in the investigation for Federal. With regard to Axis, the participants are counsel for Axis and Almanzar Rivera and with respect to Lloyds, counsel for Lloyds and Nick Barron of Ace Underwriting Agencies Ltd. Participated in the investigation. Fifth Third Bank is entitled to the analysis and all communications between these individuals and the Defendants in response to its document requests. We are requesting that the Lloyds entities revise the response to Interrogatory No. 23 and produce the documents identified herein. If Lloyds refuses, let me know so we can set a date before the Magistrate to bring this matter to her attention.

We also discussed the issue of producing a person relating to reserve information. In a claim asserti[ng] information in this District and others is clearly discoverable. *Retail Ventures Inc. v. National Union*

**EXHIBIT**

**2**

1

*Pittsburgh*, 2007 U.S. Dist. LEXIS 83425 at para. 13 (S.D. Oh, Nov. 8, 2007); (information regarding reserves in the case, even if not determinative of every issue, is nevertheless information calculated to lead to the discovery of admissible evidence).  *Consugar v. Nationwide Insurance Co. of America*, 2011 U.S. Dist. LEXIS 61756 at para. 15 (M.D. Pa. June 9, 2011) (the amount of reserve, if any, assigned to [claimant] claims should be produced; *Pepperwood of Naples Condominium Assoc., Inc. v. Nationwide Mutual Fire Ins. Co.*, 2011 U.S. Dist. LEXIS 114073 at para. 37 (M.D. Fla. Oct. 1, 2011); *Isilon Systems, Inc. v. Twin City Fire Insurance Co.*, 2012 U.S. Dist. LEXIS 18626 (W.D. Wash. Feb. 15, 2012).  Your clients' Rule 30(b)(6) representatives should be prepared to testify as to reserve information for each of their policies.

Finally, we discussed the issue relating to producing a person to testify as to the manner in which your clients have made coverage decisions with regard to other policies.  You indicated that the financial institution bond in this case is a manuscript obligation that was written specifically for Fifth Third.  We disagree that the Bond in this case is so different that similar decisions regarding coverage made by your clients in relation other financial institution bond policies are irrelevant.  We acknowledge, however, that there are differences in the Fifth Third bond from the institutional Standard Form 24.  We are in the process of deciding whether to withdraw this topic and will let you know by next Monday, December 28, 2015.

Thank you for your attention to this matter.


Mark

**Mark Byrne**

| | |
|---|---|
| **From:** | Mark Byrne |
| **Sent:** | Friday, December 4, 2015 4:55 PM |
| **To:** | Schmookler, Scott |
| **Cc:** | Charles Turnbull; christopher.losquadro@sedgwicklaw.com; bstrawbridge@fbtlaw.com; bgoldwasser@wgmlpa.com; jgelinas@fbtlaw.com; Regina Ripley; Ji Suh; Ken Seibel; Daniel.Bryer@sedgwicklaw.com |
| **Subject:** | Confirmation of Meet and Confer on 30(b)(6) Objections |

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | Schmookler, Scott | |
| | Charles Turnbull | |
| | christopher.losquadro@sedgwicklaw.com | |
| | bstrawbridge@fbtlaw.com | |
| | bgoldwasser@wgmlpa.com | |
| | jgelinas@fbtlaw.com | |
| | Regina Ripley | |
| | Ji Suh | |
| | Ken Seibel | Read: 12/4/2015 5:00 PM |
| | Daniel.Bryer@sedgwicklaw.com | |

Scott,

In supplementation to our meet and confer yesterday and in response to your email we received yesterday at 6:07 p.m., we are providing the following information.

**No. 58: Identification of outside counsel who advised RLI on the issue of whether or not coverage existed for Fifth Third's claim and when and to whom that advice was provided**

In your email you claim that we are seeking someone to name any attorneys hired by RLI. This was not the focus of our conversation yesterday relating to this topic. We discussed RLI producing a person to testify as to the identification of outside counsel who advised RLI on the issue of whether or not coverage existed for Fifth Third's claim and when and to whom that advice was provided. You responded that you were the person that provided the advice and that Nathalie would testify in that regard. We would expect in the Rule 30(b)(6) deposition that she is able to identify the date you provided that coverage decision to RLI. Your summary is inaccurate. I understand Nathalie will testify as you represented in our conversation yesterday.

**No. 59: The date on which RLI concluded that FTB anticipated litigation against RLI, the identity of the individuals who concluded this and the material facts that RLI relied on for this conclusion**

In your email you claim that in the event we agree to limit the topic to "when RLI anticipated litigation and the facts that led it to anticipate litigation" you will be happy to discuss this with your client. Again my notes reflect that you stated that in September of 2013 you sent a letter to Chuck Turnbull and the date of that letter reflects the date RLI anticipated litigation in this matter. You indicated that Nathalie will testify to those facts. There was no discussion ~~seeking a compromise and would consider a compromise after you discussed that issue with your clie~~

1

EXHIBIT

3

**No. 61: Identification of levels of reserve set aside for Fifth Third's claim and the material facts which RLI relied on to establish the reserves and/or valuate the claim**

We believe that in a bad faith claim similar to the one that exists against RLI information regarding reserves is discoverable.  We believe the following cases support our position:  *Isilon Systems, Inc. v. Twin City Fire Insurance Company*, 2012 U.S. Dist. LEXIS 18626 (W.D. Washington Feb. 15, 2012), *Pepperwood OF Naples Condominium Association, Inc. v. Nationwide Mutual Fire Insurance Company*, 2011 U.S. Dist. LEXIS 114073 at para 37 (M.D. Fla. Oct. 1, 2011).  If you have case law which indicates reserves are not discoverable where the issue involves an allegation of bad faith, I will be happy to review the same.

**No. 63: The identification of correspondence in RLI's privilege log in which any coverage issue was the subject of the communication**

You have objected to providing a witness on this topic because it allegedly seeks mental impressions and legal advice.  We disagree.  I am sure you are aware of the case of *Boone v. Vanliner Ins. Co.* (2001), 91 Ohio St.3d 209, in which the Ohio Supreme Court held that "in an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage." Emphasis added.  See also *Park-Ohio Holdings Corp. v. Liberty Mutual Fire Insurance Co.*, 2015 U.S. Dist. LEXIS 112448 (N.D. OH Aug. 25, 2015) (attorney-client communications related to the issues of coverage that were created prior to the denial of coverage are discoverable).  As you know, the insureds in this case have taken the position they have never denied the claim and as of this day all the insurers except RLI continue to assert that they have not denied the claim.  Under both *Boone* and *Park-Ohio* Fifth Third is entitled to all communications between the insurer and its counsel until the time the insurers denied the claim.  In RLI's case we believe the case law supports a constructive denial occurred on the day it filed its complaint in October 2015.  Therefore, we believe we are entitled to any document listed on the privilege log that has been withheld on the bases of privilege where the substance of that communication involves the issue of coverage.  The reason for this topic is for RLI's designee to identify the correspondence which involves the issue of coverage so that we may seek an order from the Court requiring RLI to produce these documents.

**No. 64: The subject matter of each communication or document in RLI's privilege log that RLI has redacted or withheld**

Again, the reason for this topic is based upon our belief that under *Boone* we are entitled to know the substance of the communication so that a determination can be made as to which document the assertion of privilege is inapplicable.   This would fall under information that is required to be contained in a privilege log i.e. "any other pertinent information necessary to establish the elements of each asserted privilege."  *The Little Hocking Water Assn, Inc. v. E.I. Du Pont De Nemours & Co.,* 2013 U.S. Dist. LEXIS 22213 at para. 33 (S.D. OH, Feb. 19, 2013).

**No. 65: The material facts that RLI relies on to conclude that the documents in its privilege log are protected by the work product doctrine because they were prepared after RLI anticipated litigation with FTB**

As set forth in Federal Rule of Civil Procedure 26(b)(3), the work-product privilege protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3).  "Once the party requesting discovery establishes relevance, the objecting party has the burden of showing that the material was prepared in anticipate of litigation or for trial."  *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 473 (6th Cir. 2006) (internal quotation marks omitted).  In determining whether a document was prepared "in anticipation of litigation," this court asks whether it was prepared or obtained "because of" the prospect of litigation. *United States v. Roxworthy* , 457 F.3d, 590, 593 (6th Cir. 2006).  The test to determine whether a

document was prepared "because of" the prospect of litigation has both a subjective and an objective element and asks: "(1) whether a document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation of litigation was objectively reasonable." *Id.* at 594. Nathalie should be prepared to testify as to the factual basis RLI had back in 2013 that it anticipated litigation in this case and the facts why it anticipated litigation versus the documents on the privilege log being prepared in the ordinary course of RLI's business. She also should be prepared to testify as to the facts upon which RLI asserts in this case that its anticipation in litigation determination was reasonable at that time.

**No. 66: The material facts that RLI relies on to conclude that the documents in its privilege log are protected by the common interest doctrine**

Fifth Third does not believe that any of the prelitigation correspondence or documents listed on the privilege log are protected by a common interest privilege. The law in this district is that voluntary disclosure of communications made with one's attorney to a third party generally waives the attorney-client privilege. *Cooey v. Strickland*, 269 F.R.D. 643, 652 (S.D. Ohio 2010). In order to avoid a waiver, parties may attempt to assert a common-interest privilege. In order to fall within the common interest privilege a party must show (1) the communications were made in the course of a joint defense effort; (2) the statements were designed to further the effort; and (3) the privilege has not been waived." *Travelers Cas. & Sur. Co. v. Excess Ins. Co.*, 197 F.R.D. 601, 606 (S.D. Ohio 2000) (citing *In re Bevill, Bresler & Schulman Asset Management Corp.*, 805 F.2d 120, 126 (3d Cir. 1986)). In construing the doctrine narrowly, courts within the Sixth Circuit have concluded that an attorney must be involved in the communications for the doctrine to apply. *Burkhead & Scott, Inc. v. City of Hopkinsville, Hopkinsville Solid Waste Authority*, 2014 U.S. Dist. LEXIS 166374 at para. 10 (W.D. Kentucky, Dec. 1, 2014) (when a person provides information to another without first consulting his own attorney, it is difficult to see how the information was given as part of a joint defense, even when the recipient may be viewed as a party with similar interests). *United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 29 (1st Cir. 1989). Nathalie should be prepared to testify as to the date that RLI entered into an agreement with the other parties in this case for purposes of a joint defense effort, which attorneys on behalf of RLI were involved in the communication and the common interest that existed between RLI and the party that RLI was communicating with. These are facts.

**No. 67: The identification of any other claim made by an insured against RLI for payment under a fidelity bond similar in language to the bond at issue**

We disagree that this topic is "problematic" and "overly broad" since you indicated yesterday that RLI never had a claim before 2008 and between 2009 and 2011 it only received six claims relating to this bond. However, in the spirit of cooperation, we are willing to amend this topic to read "The identification of any other claim made by an insured against RLI for payment under Section 1(A)(1) on page 11 of 117 and Section 1(D)A(1) on page 13 of 117 of the Fidelity Bond attached to Plaintiff's first amended complaint as Exhibit 1 in Case No. 1:14-cv-869 United States District Court, Southern District of Ohio, Western Division.

**No. 68: The identification of any policies or procedures relating to the administration or investigation of a claim brought by an insured against RLI between 2008 to 2011**

We disagree that this topic is "excessively broad", however, in the spirit of cooperation we are willing to amend this topic to read "The identification of any policies or procedures relating to the administration or investigation of a claim brought by an insured against RLI for claims arising under the Fidelity Bond attached to Plaintiff's first amended complaint as Exhibit 1 in Case No. 1:14-cv-869, United States District Court, Southern District of Ohio, Western Division.

Finally, we believe a Rule 30(b)(6) deposition is a proper discovery vehicle regarding the topics we have identified in our deposition notice. As you know, the privilege a party may have is asserted in the first instance pursuant to Fed. R. Civil

Procedure 26(b)(5) wherein the party asserting the privilege/protection must do so with particularity for each document or category of documents for which the privilege is claimed. "If, after this has been done, the requesting party challenges the sufficiency of the assertion of privilege/protection, the asserting party may no longer rest on the privilege log, but bears the burden of establishing an evidentiary basis—by affidavit, deposition transcript, or other evidence—for each element of each privilege/protection claimed for each document or category of document. A failure to do so warrants a ruling that the documents must be produced because of the failure of the asserting party to meet its burden. If it makes this showing, and the requesting party still contests the assertion of privilege/protection, then the dispute is ready to submit to the court, which, after looking at the evidentiary support offered by the asserting party, can rule o the merits of the claim or order that the disputed documents be produced for *in camera* inspection." *Corine Elat v. Caroline Ngoubene*, 2013 U.S. Dist. LEXIS 116275 at para. 12 (S.D. Md., Aug. 16, 2013). The Sixth Circuit has a similar standard that a party may satisfy its burden of demonstrating or opposing privilege in any "of the traditional ways in which proof is produced in pretrial proceedings such as affidavits made on personal knowledge, depositions, or answers to interrogatories, and that the showing can be opposed or controverted in the same manner." *Roxworthy*, 457 F.3d at 597 (quoting *Toledo Edison Co. v. G A Techs., Inc.,* 847 F.2d 335, 339 (6th Cir. 1988). Emphasis added. Consequently, various cases exist in which questions relating to the privilege log were posed in a Rule 30(b)(6) deposition. *VC Management, LLC v. Reliatar Life Insurance Company*, 2015 U.S. Dist. LEXIS 51343 (E.D. Ill, Apr. 20, 2015), *The Equal Rights Center v. Lion Gables Residential Trust*, 2010 U.S. Dist. LEXIS 58951 (D. MD, June 15, 2010), *Carl Zeiss Vision International GMBH; Carl Zeiss Vision Inc. v. Signet Armorlite, Inc.*, 2009 U.S. Dist. LEXIS 111877 (S.D. CA, Dec. 1, 2009). Accordingly, we believe our topics listed in the Rule 30(b)(6) deposition noticed to RLI are appropriate.

Mark J. Byrne, Esquire
Jacobs, Kleinman, Seibel & McNally LPA
Cincinnati Club Building
30 Garfield Place, Suite 905
Cincinnati, Ohio  45202
Tel:  (513) 381-6600 ext. 15
Fax: (513) 381-4150
Email:  mbyrne@jksmlaw.com

CONFIDENTIALITY NOTICE: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution, or copying of it or its contents is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.