# Exhibit B

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

FIFTH THIRD BANCORP, an Ohio
corporation, and FIFTH THIRD BANK,
an Ohio banking corporation,

        Plaintiffs,

        v.

CERTAIN UNDERWRITERS AT
LLOYD'S SUBSCRIBING TO POLICY
NUMBERS B0509QA048710 and B0509QA051310,
AXIS INSURANCE COMPANY, FEDERAL
INSURANCE COMPANY, CONTINENTAL
INSURANCE COMPANY, FIDELITY AND
DEPOSIT INSURANCE COMPANY and
ST. PAUL MERCURY INSURANCE COMPANY,

        Defendants.

Case No. 1:14cv869

## PLAINTIFFS' SECOND AMENDED COMPLAINT WITH JURY DEMAND REQUESTED HEREIN

Fifth Third Bancorp and Fifth Third Bank for their Second Amended Complaint against Defendants state as follows:

### NATURE OF THE ACTION

1. This breach of contract action arises out of losses caused by the dishonest and fraudulent acts of Fifth Third Bank's former employee, Matthew P. Ross ("Ross"), and the failure of the Defendants to pay Plaintiffs for their losses pursuant to the terms of three Financial Institution Bonds covering the losses. By this action, Plaintiffs seek indemnification and reimbursement for their losses and expenses based upon the Defendants' respective obligations under the Financial Institution Bonds to cover the losses caused by Ross.

**PARTIES**

2. Plaintiff, Fifth Third Bancorp, is an Ohio corporation and holding company which is the sole owner of Fifth Third Bank, an Ohio banking corporation. Fifth Third Bancorp and Fifth Third Bank each have their principal place of business in Cincinnati, Ohio.

3. Defendants, Certain Underwriters at Lloyd's, subscribing to policy numbers B0509QA048710 and B0509QA051310 are insurance underwriting syndicates located in London, England, with offices in New York. The London Syndicates subscribing to Policy No. B0509QA048710 are Syndicate Nos. 2488 and 2007. The London Syndicates subscribing to Policy No. B0509QA051310 are Syndicate Nos. 2488, 1183 and 1084.

4. Defendant, AXIS Insurance Company, is an insurance company incorporated in Illinois with its principal place of business in New York, transacting business in the State of Ohio. AXIS Insurance Company subscribed to Policy Nos. B0509QA048710, B0509QA051310, and 81906760.

5. Defendant, Federal Insurance Company, is an insurance company incorporated in Indiana with its principal place of business in New Jersey, transacting business in the State of Ohio. Federal Insurance Company participates under Policy Nos. B0509QA048710, B0509QA051310 under the terms of concurrent Policy Nos. 81598950 and 8190675, respectively, and subscribed to Policy No. 81906760.

6. Defendant, Continental Insurance Company (also known as CNA Insurance Company) is an insurance company incorporated in Illinois with its principal place of business in Illinois, and transacts business in the State of Ohio. Continental Insurance Company subscribed to Policy No. 81906760.

7. Defendant, Fidelity and Deposit Insurance Company of Maryland (also known as Zurich Insurance Company) is an insurance company incorporated in Maryland with its principal place of business in Illinois, and transacts business in the State of Ohio. Fidelity and Deposit Insurance Company of Maryland subscribed to Policy No. 81906760.

8. Defendant, St. Paul Mercury Insurance Company (also known as Travelers Insurance Company) is an insurance company incorporated in Connecticut with its principal place of business in Connecticut, and transacts business in the State of Ohio. St. Paul Mercury Insurance Company subscribed to Policy No. 81906760.

## JURISDICTION

9. Jurisdiction exists pursuant to 28 U.S.C. §1332 for the reason that the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and there is complete diversity between the Plaintiffs and Defendants.

## VENUE

10. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b).

## FACTUAL BACKGROUND

11. Plaintiffs purchased three Financial Institution Bonds issued by the Defendants which cover the losses at issue in this Complaint:

    a. Financial Institution Bond identified as Market Reference No. B0509QA048710 ("Primary Bond");

    b. Financial Institution Bond identified as Market Reference No. B0509QA051310 ("First Excess Bond"); and

    c. Financial Institution Bond identified as 81906760 ("Second Excess Bond") (collectively, the "Bonds"). True and correct copies of the Bonds are attached to

3

this Complaint as **Exhibits 1, 2** and **3**, respectively, and are incorporated herein by reference. The Bonds were delivered and accepted in Cincinnati, Ohio, and by their specific terms are governed by Ohio law.

12. Fifth Third Bancorp and its affiliates and subsidiaries, including Fifth Third Bank, are insured under the Bonds for covered losses.

13. The Bonds were issued for the term commencing July 1, 2010 to June 30, 2011.

14. Within the term of each of the Bonds, losses covered under the Bonds were discovered by Plaintiffs.

15. The Primary Bond provides coverage up to the policy limit of liability of $25 million.

16. The First Excess Bond provides coverage up to the policy limit of liability of $25 million.

17. The Second Excess Bond provides coverage up to the policy limit of liability of $50 million.

18. Each of the Defendants participates in one or more of the Bonds as set forth in the respective Bonds.

19. In addition, Defendant, Federal Insurance Company, participates in the Primary Bond under the terms of Bond No. 81598950, a copy of which is attached as **Exhibit 4**, and participates in the 1st Excess Bond under the terms of Concurrent Policy No. 81906759, a copy of which is attached as **Exhibit 5**.

20. In addition, RLI Insurance Company, an Illinois corporation, participates in the 1st Excess Bond and 2nd Excess Bond and has commenced a prior civil action in this Court with respect to its obligations under the Bonds, which is designated as Case No. 1:14cv802. Plaintiffs

have filed a Counterclaim against RLI Insurance Company in that pending action alleging the same breach of contract as set forth herein.

## MATTHEW ROSS' DISHONEST AND FRAUDULENT ACTS

21. At all times relevant to this Complaint, Ross was employed by Plaintiff, Fifth Third Bank, where he became a Vice President in the Structured Finance Group.

22. During his employment with Fifth Third Bank, Ross committed dishonest and fraudulent acts within the meaning of the Bonds, including without limitation:

    a. Ross failed to disclose a pre-existing and continuing financial and business relationship with Edward Netherland ("Netherland") whom Ross brought to Fifth Third Bank as a customer;

    b. Ross caused Fifth Third Bank to fund fraudulent loan facilities for the benefit of Netherland, InsCap Management LLC, and its affiliated entities ("InsCap") and other persons affiliated with InsCap;

    c. Ross proposed that Fifth Third Bank fund a credit facility designated as "LIPF II" to provide life insurance premium financing for use in the marketing, origination and sale of InsCap's "Ultra" insurance program. In securing Fifth Third Bank's credit approval, Ross made fraudulent misrepresentations to Fifth Third's management, including without limitation, that Fifth Third Bank's interests would be protected by valuations of the policies by Life Asset Group and that the servicing agent, LaSalle Bank, would serve as a fiduciary and be liable for losses stemming from "unacceptable" fundings under the Ultra program. Ross knew that these representations as to the "protections" provided to Fifth Third Bank under the Ultra program were not

part of the program's design or structure, which was compelled by InsCap and to which Ross agreed;

      d.      Ross concealed from Fifth Third Bank management the close affiliation between InsCap and Life Asset Group and its owner, Gary Brecka, and subsequently misrepresented to Fifth Third Bank management that Life Asset Group would be replaced with a different valuation provider;

      e.      Ross colluded with InsCap and its principals, including without limitation, Edward Netherland, Harish Raghavan and Ira Brody in perpetrating fraud upon Fifth Third Bank by creating and/or failing to disclose fraudulent documentation used to secure Ultra loans funded by Fifth Third Bank;

      f.      In collusion with InsCap's principals, Ross permitted the payment of fraudulent "credit fees" and other fraudulent payments from Fifth Third Bank fundings in the Ultra program for the benefit of InsCap's principals;

      g.      In collusion with InsCap's principals, Ross funded advances for the stated purpose of purchasing life insurance policies as collateral for loans when in fact no life insurance policies were purchased and the required collateral to support the loans did not exist;

      h.      Ross conspired with InsCap's principals to create and furnish to Fifth Third Bank fraudulent financial reporting statements regarding the status of collateral in the LIPF II credit facility;

      i.      Ross colluded with InsCap's principals in the conversion of $2 million from an Ultra funding and misrepresented to Fifth Third Bank that the converted

$2 million belonged to an InsCap principal and would serve as collateral for additional funds advanced by Fifth Third Bank to InsCap;

    j.    Ross failed to disclose, on a continuing and systematic basis, fraud occurring in connection with fundings from the LIPF II credit facility and concealed his role in the fraud thereby causing Fifth Third Bank to continue fundings under the LIPF II credit facility and increasing the losses sustained by Fifth Third Bank; and

    k.    Ross maintained ongoing financial business and personal transactions with InsCap principals, including Netherland, before, during and after the term of the LIPF II credit facility without disclosing such transactions to Fifth Third Bank.

## FINANCIAL BENEFIT

23.    In committing dishonest and fraudulent acts in collusion with, and for the benefit of, InsCap and its principals and affiliates, Ross intended to, and in fact did receive, substantial financial benefits including, without limitation:

    a.    Receipt of the amount of $75,100 which was generated from the proceeds of an Ultra funding through the LIPF II credit facility which funding was approved by Ross;

    b.    Upon information and belief, Ross intended to receive and, in fact received, substantial financial benefits from "off the books" financial transactions with Netherland and other principals of InsCap including a $20,000 payment which Ross made to Netherland in 2007 shortly before the establishment of the LIPF II credit facility;

    c.    Upon information and belief, Ross received additional financial benefits all of which were paid from the excessive payments and benefits provided to InsCap and

7

its principals out of the fraudulent fundings under the LIPF II credit facility and other InsCap credit facilities which were overseen by Ross;

  d. Ross funded payments on InsCap's credit cards from InsCap's line of credit, which credit card charges included the payment for benefits received by Ross and which InsCap paid on Ross's behalf, all of which were concealed by Ross from Fifth Third Bank; and

  e. On information and belief, Ross received additional financial benefits as a result of his dishonest and fraudulent acts.

## LOSSES

24. The total amount of the loss sustained by Plaintiffs is in excess of $100 million and exceeds the policy limits of liability under the Bonds.

## ADDITIONAL FACTS PERTINENT TO COVERAGE

25. Notice of loss was given to Defendants on February 8, 2011, timely upon discovery of a covered loss under the Bonds.

26. Plaintiffs submitted a timely sworn Proof of Loss to Defendants on October 17, 2011, and have supplemented the Proof of Loss since that date with additional information and documents on numerous occasions, including the providing of hundreds of thousands of documents in electronic form at considerable expense to Plaintiffs.

27. Plaintiffs have conducted a detailed investigation of the fraud perpetrated on Fifth Third Bank by InsCap and Ross' involvement in that fraud, and have furnished Defendants with the results of that investigation and otherwise fully cooperated with Defendants and fully responded to all requests by Defendants for information which Plaintiffs are able to provide.

28. Defendants have failed to investigate the claim in a reasonable or appropriate time or manner.

29. Defendants have maintained that Fifth Third has failed to demonstrate that Ross committed dishonest or fraudulent acts within the meaning of the Bonds despite the overwhelming evidence submitted by Plaintiffs supporting its claims of such dishonesty and fraudulent acts.

30. Defendants have failed to advance payments for claims expenses to Fifth Third as required by the Bonds.

31. The losses constitute recoverable losses under the Bonds up to the full aggregate policy limits of the liability of the Bonds.

32. All of the elements, obligations and conditions precedent required under the Bonds have been met or performed.

## COUNT I
## BREACH OF CONTRACT

33. Plaintiffs hereby adopt, incorporate and reiterate all of the preceding Paragraphs of this Complaint, as if fully set forth herein.

34. Losses exceeding the policy limits of liability under the Bonds have been incurred.

35. The Defendants have breached their contract as set forth in the Bonds by failing to pay any of the covered losses under the Bonds.

36. Defendants have acted in bad faith in breaching their contractual obligations to pay Plaintiffs under the Bonds by failing to acknowledge the overwhelming evidence of dishonest and fraudulent acts submitted by Plaintiffs in support of their claims.

37.     As a direct and proximate result of this breach of contract, Defendants remain indebted to Plaintiffs for its insured losses in the full amount of the policy limits under the Bonds.

WHEREFORE, Plaintiffs requests the entry of judgment in its favor against the Defendants in an amount in excess of $75,000 up to the policy limits of the Bonds, plus pre-judgment interest and reasonable attorney fees and other relief the Court deems necessary and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38, Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury for all issues so triable.

Dated: _____, 2016

                                          Respectfully submitted,

_____
Mark J. Byrne (0029243)
Kenneth F. Seibel (0025168)
Jacobs Kleinman Seibel & McNally Co. L.P.A.
30 Garfield Place, #905
Telephone:  513-381-6600
Facsimile:  513-381-4150
mbyrne@jksmlaw.com
kseibel@jksmlaw.com
**TRIAL COUNSEL FOR PLAINTIFFS**

Charles E. Turnbull
Lawrence M. Scott
Marc D. Kaszubski
12900 Hall Rd., Suite 350
Sterling Heights, MI 48313
586-726-1000
Fax: 586-726-1560
cturnbull@orlaw.com
cott@orlaw.com
mkaszubski@orlaw.com
**ADMITTED PRO HAC VICE**

David Halbreich
Traci Rea
Douglas Widin
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Telephone: 213 457 8033
Facsimile: 213 457 8080
dhalbreich@reedsmith.com
dwidin@reedsmith.com
trea@reedsmith.com
**ADMITTED PRO HAC VICE**