IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| FIFTH THIRD BANCORP, an Ohio corporation, and FIFTH THIRD BANK, an Ohio banking corporation,<br><br>    Plaintiffs,<br><br>  -against-<br><br>CERTAIN UNDERWRITERS AT LLOYD'S SUBSCRIBING TO POLICY NUMBERS B0509QA048710, and B0509QA051310, AXIS INSURANCE COMPANY, ACE INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, CONTINENTAL INSURANCE COMPANY, FIDELITY AND DEPOSIT INSURANCE COMPANY and ST. PAUL MERCURY INSURANCE COMPANY,<br><br>    Defendants. | Civil Action No. 1:14-cv-869 |

**<u>UNDERWRITERS' REPLY IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER AS TO RULE 30(B)(6) NOTICES</u>**

David P. Kamp (OH 0020665)
Brian D. Goldwasser (OH0061926)
WHITE GETGEY & MEYER CO., L.P.A.
1700 Fourth & Vine Tower
One West Fourth Street
Cincinnati, OH 45202
dkamp@wgmlpa.com
jmccoy@wgmlpa.com
bgoldwasser@wgmlpa.com
Telephone (513) 241-3685

John W. Blancett (admitted *pro hac vice*)
Christopher Losquadro (admitted *pro hac vice*)
Christopher Novak (admitted *pro hac vice*)
William J. Brennan (admitted *pro hac vice*)

SEDGWICK LLP
john.blancett@sedgwicklaw.com
christopher.losquadro@sedgwicklaw.com
christopher.novak@sedgwicklaw.com
william.brennan@sedgwicklaw.com
225 Liberty Street, 28th Floor
New York, NY 10281
Telephone (212) 422-0202

*Attorneys for Certain Underwriters at Lloyd's Subscribing to Policy Numbers B0509QA048710 and B0509QA051310, AXIS Insurance Company, and Federal Insurance Company*

# **CONTENTS**

| | | |
|---|---|---|
| I. | **PRELIMINARY STATEMENT** | 1 |
| II. | **FTB'S REFUSAL TO COMPROMISE FORCED UNDERWRITERS TO SEEK A PROTECTIVE ORDER** | 3 |
| III. | **FTB VIOLATED THE COURT'S JULY 27TH STAY/BIFURCATION ORDER** | 5 |
| IV. | **FTB'S TOPICS CONCERNING UNDERWRITING AND CLAIMS HANDLING ARE NOT RELEVANT TO ANY PARTY'S CLAIM OR DEFENSE** | 6 |
| V. | **FTB'S OPPOSITION CONTAINS AN IMPROPER REQUEST TO COMPEL UNDERWRITERS TO PRODUCE DOCUMENTS** | 10 |
| VI. | **CONCLUSION** | 11 |

Defendants Certain Underwriters at Lloyd's subscribing to Policy Numbers B0509QA048710[1] and B0509QA051310[2] (collectively "Lloyd's"), AXIS Insurance Company ("AXIS"), and Federal Insurance Company ("Federal") (collectively, "Underwriters") respectfully submit this Reply in support of their motion for a Protective Order regarding improper, irrelevant, overbroad and inappropriately vague Topics contained in identical Rule 30(b)(6) Deposition Notices that FTB[3] served on each of the Lloyd's Syndicates, AXIS and Federal.

I. **PRELIMINARY STATEMENT**

Contrary to FTB's statement that this motion is premature, Underwriters had no choice but to seek a Protective Order because FTB has insisted on seeking discovery that is irrelevant or stayed. Underwriters wrote to FTB on several occasions to request that it withdraw irrelevant or stayed Rule 30(b)(6) Topics and abide by the prior agreement to allow ACE, the lead Lloyd's Syndicate, to answer all discovery directed at Lloyd's. FTB refused and repeatedly stated that it would proceed with each noticed deposition on all noticed Topics. In fact, the last pre-Motion communication from FTB, on Friday, January 20th, said that FTB would review Underwriters' motion for Protective Order once it was filed on Monday, January 23rd, and respond accordingly. Consequently, Underwriters reasonably understood that the parties were at an impasse and that they were left with no alternative other than to seek Court intervention, especially since the depositions at issue were scheduled to commence only a week later.

Remarkably, it was only *after* Underwriters filed their motion (on January 23, 2017) that FTB belatedly acknowledged for the first time (on January 24, 2017) that its Topics relating to

---

[1] Lloyd's Syndicates 2488 ("ACE") and 2007 ("Novae") subscribe to Policy Number B0509QA048710. ACE is the lead Lloyd's Underwriter for Policy Number B0509QA048710.

[2] Lloyd's Syndicates ACE, 1183 ("Talbot") and 1084 ("Chaucer") subscribe to Policy Number B0509QA051310. ACE is also the lead Lloyd's Underwriter for Policy Number B0509QA051310.

[3] Plaintiffs Fifth Third Bancorp and Fifth Third Bank are collectively referred to herein as "FTB."

1

reserves and other policyholder information were improper and should be withdrawn.[4] FTB also belatedly acknowledged in its January 24th correspondence that discovery directed at Lloyd's should be limited to the lead Lloyd's Syndicate. However, even these untimely admissions do not go far enough because FTB has not withdrawn: (i) Topics 1-5, seeking testimony related to underwriting; and (ii) Topics 6, 11-12 and 14-15, seeking testimony on claims handling.

Although FTB has the burden of proving that its Rule 30(b)(6) Topics are relevant and not stayed by the Court's Stay/Bifurcation Order, it notably fails to do so. FTB's Topics directed at parol evidence concerning underwriting are irrelevant and harassing because FTB has not identified any ambiguity in the Bonds that could make extrinsic evidence relevant. Rather, all parties, *including FTB*, have consistently taken the position that the Bonds are not ambiguous in any material respect. Similarly, FTB's renewed request for claims-handling discovery is merely an attempted end-run around the Court's Stay/Bifurcation Order; the plain text of the Court's Order contradicts FTB's assertion that the Court's stay of all "bad faith" discovery only applied to discovery of privileged information.

FTB's suggestion that these objections prove Underwriters are stonewalling on discovery is meritless. In fact, Underwriters have: (i) issued detailed and comprehensive coverage position letters to FTB in 2014 setting forth their analysis of the facts and circumstances surrounding FTB's claim and the applicable provisions of the Bonds; (ii) already produced the non-privileged portions of their claims files (as well as corresponding privilege logs); and (iii) have agreed to Topics 7, 8, and 10 of FTB's 30(b)(6) Notices concerning the bases for, and the principal or material facts supporting, their coverage position letters, Answers, affirmatives defenses, and interrogatory responses.

---

[4] *See* Exhibit A to Declaration of William J. Brennan in support of Motion for Protective Order as to Rule 30(b)(6) Notices ("Brennan Decl."), filed herewith.

Finally, while Underwriters' Protective Order motion addresses only FTB's Rule 30(b)(6) Notices, FTB spends much of its brief arguing in favor of a non-existent motion to compel documents from Underwriters. As FTB has not cross-moved for relief, these arguments are procedurally improper and should not be considered by the Court. Moreover, the deadline for Underwriters to respond to FTB's recently served requests for production and interrogatories has not yet expired, and the parties are still engaged in the meet and confer process regarding Underwriters' other responses to FTB's requests for production and interrogatories.

## II. FTB'S REFUSAL TO COMPROMISE FORCED UNDERWRITERS TO SEEK A PROTECTIVE ORDER

FTB complains that "Underwriters snap-filed their Motion for Protective Order before affording Fifth Third a reasonable opportunity to consider their positions." (Docket 101 at 8 of 26). According to FTB, if Underwriters had only engaged in a meet and confer process, they would have learned that FTB:

- Withdraws Topic 16 seeking reserve information (Dkt. 101 at 24 of 26);

- Withdraws all requests for information concerning other policyholders (Dkt. 101 at 24 of 26);

- Agrees that ACE may respond to discovery on behalf of all the Lloyd's Syndicates (Dkt. 101 at 22 of 26); and

- Narrows Topic 17 only to Underwriters' searches for relevant documents and information. (Dkt. 101 at 24 of 26).[5]

FTB's contention that Underwriters' motion was therefore "premature" omits crucial facts. First, this motion seeks to enforce the existing Stay/Bifurcation Order in which the Court clearly stayed discovery on all bad faith issues. Underwriters went through a lengthy and drawn out meet and confer process before filing that previous motion; FTB should not be entitled to another round of meet and confer efforts *on the same issues* each time that it violates the Court's Order. The Court

---

[5] Underwriters accept all of these concessions by FTB.

3

should admonish FTB for its violation of its Stay/Bifurcation Order, not reward it.

Second, Underwriters *did* attempt to engage FTB in a meet and confer process to prevent the necessity of filing its Motion for Protective Order. Underwriters wrote to FTB on December 20th to detail their objections to many of FTB's Topics. (Dkt. 98-2 at 13 of 22). FTB responded the next day to reject all of Underwriters' objections, without any suggestion that compromise was possible, and to warn that it "intends to move forward on all noticed topics." (Dkt. 98-2 at 14 of 22). That exchange was more than sufficient to satisfy Underwriters' duty under Rule 26(c)(1). Nonetheless, Underwriters wrote again on January 13th, to expand on the basis for their objections. (Dkt. 98-2 at 16 of 22). FTB, however, simply ignored this letter. Finally, on January 20th – only ten days before multiple London-based deponents would have to arrange intercontinental travel – Underwriters wrote again to note FTB's refusal to suggest any compromises. (Dkt. 98-2 at 21 of 22). After initially suggesting further delay – due to the asserted non-availability of FTB's junior-most counsel – FTB repeated that it still "believe[d] we should be able to go forward on the topics we noticed."[6] (Dkt. 98-2 at 20 of 22). Thus, FTB agreed to motion practice: "We will review the motion you file Monday and respond accordingly." (Dkt. 98-2, at 20 of 22). Given this undisputed history, FTB's complaint that it was not afforded "a reasonable opportunity to consider [Underwriters'] positions" is meritless.

Third, FTB's Opposition implies that FTB made a *pre*-Motion offer to compromise concerning ACE's role as the lead Lloyd's Syndicate. According to FTB's Opposition, "While Fifth Third is unaware of any prior agreement, Fifth Third nonetheless advised Defendants Underwriters

---

[6] In footnote 19 of its Opposition, FTB claims that its Topics concerning reserve and other policyholder information were merely "included … pending resolution of Fifth Third's Objections to the July 27, 2016 Memorandum Order." (Dkt. 101 at 24 of 26). This admission establishes that FTB was fully aware that these Topics violated the Stay/Bifurcation Order. Yet this admission was never communicated to Underwriters. In fact, on January 20th, three weeks after the Stay/Bifurcation Order was affirmed by Judge Beckwith, FTB continued to claim that it would go forward on all of the noticed Topics.

4

that it would agree to pursue this discovery only against Ace as long as the Non-Lead Syndicates would stipulate that discovery as to one would be discovery as to all." (Dkt. 101 at 22 of 26). It is true that FTB made this offer, but FTB inexcusably fails to inform the Court of the crucial fact – FTB's compromise on this issue was first proposed on January 24th, the day *after* Underwriters filed the present motion. (Brennan Decl., Ex. A).[7] FTB's multiple concessions on the substance of Underwriters' Protective Order motion – all first made after Underwriters filed their motion – confirm the unreasonableness of FTB's prior refusals to compromise.[8]

### III.     FTB VIOLATED THE COURT'S JULY 27TH STAY/BIFURCATION ORDER

Underwriters' opening memorandum details how FTB's Rule 30(b)(6) Topics violate the Court's July 27th Stay/Bifurcation Order. (Dkt. No. 98-1 at 6-8). In response, FTB's Opposition argues that "[t]he Stay/Bifurcation Order … is irrelevant to the Defendant Underwriters' Motion for Protective Order" because that Order "responded to the Insurers' limited request to protect their privileged information and stayed discovery of only that privileged information that would fall within the scope of *Boone" v. Vanliner Ins. Co.*, 744 N.E.2d 154 (Ohio 2001). (Dkt. 101 at 7, 11 of 26). FTB's argument is wholly inconsistent with both the text and reasoning of the Court's Stay/Bifurcation Order.

FTB claims that "[t]he Court's Stay/Bifurcation Order was premised on *Boone v. Vanliner Ins. Co.*" (Dkt. 101 at 9 of 26). This is not correct. In fact, the Court cited *Boone* only to acknowledge that Ohio law provided an arguable basis for FTB to seek privileged materials. (Dkt. 70 at 6). After citing to *Boone*, however, the Court's analysis of the merits of a discovery

---

[7] FTB's January 24th email also proposed, for the first time, compromises on Topics concerning reserves and other policyholders, and depositions of the non-lead Syndicates. (Brennan Decl., Ex. A). FTB's comment that these compromises would have been revealed "in the meet and confer session we proposed," however, is baseless – no such meet and confer was proposed.

[8] FTB ends this paragraph with an "Id." cite after "The Defendants Underwriters refused to so stipulate, preferring to stand on their premature Motion for Protective Order." Although it gives the appearance of evidentiary support for a claim about Underwriters' conduct, that "Id." does not appear to relate to any supporting evidence.

5

bifurcation/stay continued for three and a half more pages, with no further mention of *Boone*. Certainly, the Court's Stay/Bifurcation Order included privileged information, but it was in no way limited to that category. Thus, the Court explicitly described the stayed categories of information – the "bad faith" issues – as "including" privileged information, among other categories. (Dkt. 70 at 5). In explaining the scope of its stay, the Court acknowledged that it was staying an "extremely broad expansion of discovery that Fifth Third seeks to support its 'bad faith' allegations." (Dkt. 70 at 9 & n. 10; Dkt 70 at 5 ("Based upon the referenced allegation of bad faith, Fifth Third seeks very broad discovery of many documents that otherwise would be subject to privilege and/*or potentially irrelevant to the underlying breach of contract claim*" (emphasis added)). Thus, the operative language of the Court's Order, though ignored by FTB, is not limited to privileged information. (Docket No. 70, at 8-10 ("[D]iscovery that relates to Plaintiff's bad faith allegations is STAYED").

### IV. FTB'S TOPICS CONCERNING UNDERWRITING AND CLAIMS HANDLING ARE NOT RELEVANT TO ANY PARTY'S CLAIM OR DEFENSE

Underwriters noted that if "an objection to the relevance of the sought discovery is raised, 'the party seeking discovery must demonstrate that the requests are relevant to the claims or defenses in the pending action.'" (Dkt. 98-1 at 10 of 16).[9] FTB has made no effort to carry this burden. Rather, FTB argues that the discovery categories it attempted to justify in its opposition to Underwriters' prior motion for a stay/bifurcation by reference to its bad faith claim now relate instead to its breach of contract claim, and accuses Underwriters of "stonewall[ing]." (Dkt. 101 at 12 of 26)

First, Underwriters have in no way stonewalled FTB's discovery.[10] Prior to the

---

[9] Citing *First Horizon Nat'l Corp. v. Houston Cas. Co.*, No. 2:15-CV-2235-SHL-DKV, 2016 WL 5869580, at *4 (W.D. Tenn. Oct. 5, 2016) (quoting *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008)).

[10] FTB's "evidence" of stonewalling is the fact that Underwriters' "Rule 26(a)(1) initial disclosures do not list a single individual employed by the Insurers, nor do they identify a single internal document in the possession, custody, or control of the Insurers." (Dkt. No. 101 at 12 of 16, n.5). That is not evidence of stonewalling, but

Stay/Discovery Order, ACE, AXIS, and Federal had already produced the non-privileged portions of their claims files.[11] Moreover, Underwriters' coverage position letters to FTB identified the key terms in the Bonds, and explained Underwriters' interpretation of them prior to commencement to this case. Similarly, Underwriters' Answers and affirmative defenses identify the relevant terms and provisions in the Bonds that Underwriters believe preclude coverage. Finally, Underwriters have agreed to produce a witness on Topics 7 (the bases for and material facts and documents supporting Underwriters' Answers and affirmative defenses) and 10 (the bases for and the material facts and documents supporting Underwriters' reservation of rights letters). Thus, FTB is already fully aware of Underwriters' interpretation of the Bonds in this case, and will be able to question a witness about how the Bonds' terms apply to the facts of this case. FTB needs nothing more to litigate its breach of contract claim, which concerns only the application of facts regarding FTB's claim to the Bonds.

Second, FTB argues that its claims-handling Topics are relevant because "statements in the Insurers' Claims Files that are inconsistent with their litigation positions would establish alternative interpretations of the Bond and/or constitute admissions regarding the Insurers' coverage positions or the scope of coverage."[12] (Dkt. 101 at 12 of 26). Similarly, FTB refers to unspecified "disputed Bond Terms." (Dkt. 101 at 12 of 26). This argument is specious because FTB has never alleged that any of the Bonds' terms are ambiguous. Given that fact, Ohio law on contract interpretation makes parol evidence of intent not merely inadmissible, but irrelevant. *See, e.g.*, *Pollock v. State Farm Mut. Auto. Ins. Co.*, No. 2:11-cv-581, 2013 WL 1150734, at *6 (S.D. Ohio Mar. 19, 2013) (extrinsic evidence is irrelevant where policy language is unambiguous); *Dunson v. Home-Owners Ins. Co.*,

---

consistency – Underwriters do not believe that their internal documents are relevant to their defenses.

[11] Brennan Decl., Ex. B.

[12] FTB's suggestion that it does not have the relevant claim files is not correct. As noted above, ACE, AXIS, and Federal have already produced the non-privileged portions of their claims files, yet FTB has still been unable to identify any ambiguity in the Bonds.

7

2010 Ohio 1928, 2010 Ohio App. LEXIS 1596 (May 3, 2010) (protective order to preclude discovery of drafting history was proper in absence of contractual ambiguity). *Cf. Federal-Mogul U.S. Asbestos Personal Injury Trust v. Continental Cas. Co.*, 666 F.3d 384 (6th Cir. 2011) (applying same rule under Michigan law).

Third, even though Underwriters have informed FTB of their coverage position, and identified the operative terms of the Bonds, FTB still claims that it is "too early now to assess whether or not the policy language is ambiguous." (Dkt. 101 at 21 of 26, n.15). Instead, FTB argues that its underwriting Topics are proper even if they seek evidence that is presently inadmissible due to the absence of any identified ambiguity because, "[t]he Court will not determine whether the terms or provisions of the Bond are ambiguous until it rules on summary judgment motions and/or proposed jury instructions after the close of discovery." (Dkt. 101 at 21 of 26). By basing its relevancy arguments on the possibility of a yet-unidentified ambiguity in some material term of the Bonds, however, FTB proves too much. FTB has the burden of proving that the discovery it seeks is relevant to the existing case, not to a hypothetical future case. *See Hodge v. Prater*, 2014 WL 3537954, 2014-Ohio-3152, ¶ 23 (Oh. Ct. App. 2014) ("Under Ohio law, '[i]f no ambiguity appears on the face of the instrument, parol evidence cannot be considered in an effort to demonstrate such an ambiguity'") (quoting *Shifrin v. Forest City Ents., Inc*., 64 Ohio St.3d 635, 638 (1992)).

All parties presently agree that the Bonds are unambiguous. FTB should not be permitted to seek discovery that might become relevant to a speculative future argument that FTB cannot currently identify. Moreover, FTB's relevancy argument contradicts FTB's own allegation that Underwriters acted in bad faith. If the Bonds were materially ambiguous, then there is no viable argument that Underwriters acted in an arbitrary and capricious manner by reserving their rights instead of agreeing to cover FTB's alleged loss.

Fourth, the fact that the disputed Rule 30(b)(6) Topics overlap the bad faith discovery that the Court has already stayed implies that FTB's present arguments are merely a pretext for obtaining bad faith discovery. Indeed, even FTB admits that it included some of the challenged Topics despite knowing that they were barred by the Court's Stay/Bifurcation Order. (Dkt. 101 at 24 of 26 n.19). The Court should draw the obvious conclusion that the remaining Topics concerning claims-handling were conceived as a way to evade that Order.

Finally, the cases cited by FTB in support of its arguments for the claims-handing and underwriting Topics do not require the result it seeks. Many of FTB's cases actually permit discovery because they involve claims of bad faith.[13] Others contain no reasoning at all, address the law in other states, or do not involve insurance coverage disputes.[14] A number actually support Underwriters' position because parol evidence was sought concerning specific, identified ambiguities.[15]

As FTB has failed to prove that the claims-handling and underwriting Topics are relevant to

---

[13] *E.g., Silgan Containers v. Nat'l Union Fire Ins.*, 2010 WL 5387748, at *8 (N.D. Cal. 2010); *Ins. Co. of N. Am. v. UNR Indus. Inc.*, 1994 WL 683423, at *1 (S.D.N.Y. Dec. 6, 1994); *Park-Ohio Holdings Corp. v. Liberty Mut. Fire Ins. Co.*, 2015 WL 5055947, at *2-3 (N.D. Ohio Aug. 25, 2015); *Enron Oil Trading & Transp. Co. v. Underwriters at Lloyd's*, No. CV-90-122-FG (D. Mont. April 20, 1994); *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, No. 2:07–CV–1285, 2009 WL 243034, at *4 (S.D. Ohio Jan. 30, 2009); *The Way Int'l v. Exec. Risk Indem., Inc.*, 2009 WL 3157402, at *11 (S.D. Ohio Jan. 27, 2009).

[14] *E.g., Olin Corp. v. Continental Cas. Co.*, 2011 WL 3847140 (D. Nev. 2011); *Lincoln Elec. Co. v. Travelers Cas. & Sur. Co.*, 2013 WL 9894215, at *3 (N.D. Ohio Feb. 5, 2013) (omitting any relevancy analysis); *Penn-America Ins. Co. v. Priority Dispatch*, 2004 WL 5918049, at *1 (S.D. Ohio 2004) (mem. order); *Hall v. Harleysville Ins. Co.*, 164 F.R.D. 406, 409-10 (E.D. Pa. 1996); *Carfagno v. Jackson Nat'l Life Ins. Co.*, 2001 WL 34059032, at *5 (W.D. Mich. Feb. 13, 2001) (addressing class action certification); *Teck Metals, Ltd. v. London Mkt. Ins.*, 2010 WL 4813807, at *3 (E.D. Wash. 2010) (Washington law); *Lincoln Elec. Co. v. Travelers Cas. & Sur. Co.*, 2013 WL 9894215, at *3 (N.D. Ohio Feb. 5, 2013) (omitting any analysis); *Soc'y Corp. v. Am. Cas. Co. of Reading, PA.*, 1991 WL 346302, at *1 (N.D. Ohio July 24, 1991); *Nw. Corp. v. Assoc. Elec. & Gas Ins. Servs. Ltd.*, No. Civ-07-1174, slip op at 1 (S.D. Cir. Ct. June 14, 2011); *NL Indus., Inc. v. OneBeacon Am. Ins. Co.*, No. 108881/09, slip op. at 5 (N.Y. Sup. Ct. Feb. 25, 2011).

[15] *See Silgan Containers v. Nat'l Union Fire Ins.*, 2010 WL 5387748, at *8 (N.D. Cal. 2010); Ins. Co. of N. Am. v. UNR Indus. Inc., 1994 WL 683423, at *1 (S.D.N.Y. Dec. 6, 1994); *Champion Int'l Corp. v. Liberty Mut. Ins. Co.*, 129 F.R.D. 63, 67-68, 70 (S.D.N.Y. October 31, 1989); *Cincinnati Ins. Co. v. Clark*, 1992 WL 34128, at *2 (E.D. Pa. Feb. 18, 1992); *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 623 A.2d 1099, 1105-07 (Del. Super. Ct. 1991); *Cigna Ins. Co. v. Cooper Tire & Rubber, Inc.*, 180 F. Supp. 2d 933, 936 (N.D. Ohio 2001) (reformation claim).

its breach of contract claim, or Underwriters' defenses, Underwriters are entitled to the Protective Order they seek.

**V.  FTB'S OPPOSITION CONTAINS AN IMPROPER REQUEST TO COMPEL UNDERWRITERS TO PRODUCE DOCUMENTS**

Bringing in a whole school of red herrings, FTB's Opposition asserts that "[t]he issues in Insurers' Motion for Protective Order are not limited to the Rule 30(b)(6) Notices" underlying Underwriters' motion, but rather extend to five sets of FTB's discovery requests "that have been served (and insufficiently answered) to date." (Dkt. 101 at 9 of 26, n.3). Thus, while the issue before the Court is limited to the Rule 30(b)(6) Topics, FTB's Opposition is shot through with references to its desire to obtain documents; FTB even includes a multi-page argument about the sustainability of Underwriters' claims of privilege over documents in their claims files. (Dkt 101 at 15-19 of 26). Based on this, FTB's Opposition includes a baseless request that the Court order Underwriters to produce "all documents from [Underwriters'] Underwriting Files and Claims Files created before November 10, 2014, claims manuals, policies, rules or guidelines, promotional and advertising materials, [and] communications with reinsurers." (Dkt. 101-12; Dkt. 101 at 24 of 26).

FTB does not mention, however, that the reason that Underwriters have "insufficiently answered" three of these five discovery requests is that *Underwriters' answers are not yet due*. In fact, two sets of the discovery requests that FTB complains were "insufficiently answered" were served on January 26, 2017 – *after Underwriters filed the present motion for a Protective Order*. The remaining two sets of discovery responses that FTB raises were answered in 2015, yet FTB failed to raise any concerns about these responses until December 19, 2016, and the meet and confer process regarding those responses is currently ongoing.

FTB's request, in an Opposition to Underwriters' Protective Order motion concerning Rule 30(b)(6) Topics, that the Court order Underwriters to produce documents is procedurally improper.

10

For FTB to justify this demand by pointing to still-pending discovery requests is frivolous. If FTB wishes to move to compel, it must wait for Underwriters to serve responses, engage in the meet and confer process, and then file a motion to compel. Moreover, even under FTB's cramped understanding of the Stay/Bifurcation Order, discovery into the privileged portions of Underwriters' claims files is already stayed, and FTB has made no motion to lift that stay. Accordingly, Underwriters will not address in detail FTB's misplaced request for documents, including privileged portions of their claims files, until so directed by the Court or a proper motion is brought by FTB after Underwriters have a chance to answer the discovery requests at issue, and the meet and confer process is complete.

### VI. CONCLUSION

For all of the reasons presented above and in Underwriters' prior brief, Underwriters respectfully requests that the Court enter an order granting Underwriters a Protective Order under Rule 26(c)(1): (i) prohibiting FTB from deposing, or serving further discovery demands on, Chaucer, Novae, and Talbot, as conceded by FTB; and (ii) striking Topic Nos. 1-5, 6, 11-12, and 14-17 from the 30(b)(6) Notices served on Underwriters; and for such other and further relief as the Court deems just and equitable.

Dated: February 10, 2017
Cincinnati, Ohio

Respectfully submitted,

/s/ *William J. Brennan*
David P. Kamp (OH 0020665)
Jean Geoppinger McCoy (OH 0046881)
Brian D. Goldwasser (OH0061926)
WHITE GETGEY & MEYER CO., L.P.A.
1700 Fourth & Vine Tower
One West Fourth Street
Cincinnati, OH 45202
dkamp@wgmlpa.com
jmccoy@wgmlpa.com
bgoldwasser@wgmlpa.com

11

Telephone (513) 241-3685

John W. Blancett (admitted *pro hac vice*)
Christopher Losquadro (admitted *pro hac vice*)
Christopher Novak (admitted *pro hac vice*)
William J. Brennan (admitted *pro hac vice*)
SEDGWICK LLP
john.blancett@sedgwicklaw.com
christopher.losquadro@sedgwicklaw.com
christopher.novak@sedgwicklaw.com
william.brennan@sedgwicklaw.com
225 Liberty Street, 28th Floor
New York, NY 10281
Telephone (212) 422-0202

*Attorneys for Certain Underwriters at Lloyd's Subscribing to Policy Numbers B0509QA048710 and B0509QA051310, AXIS Insurance Company, and Federal Insurance Company*